J. A. TEAGUE and wife, MARGARET, *v.* W. W. DOWNS.

Since the Act of 1848, a husband has the right to surrender his estate as tenant by the curtesy initiate, and let it merge in the reversion of his wife, who, with the assent of her husband, may sell the same and receive the whole of the purchase money.

And an agreement that the wife shall receive such price in personal property and hold the same to her separate use, to enable her to lay it out in the purchase of another tract of land, is valid, such price not vesting in the husband, *jure mariti*, so as to subject the same to the claims of his creditors.

(*Sutton* v. *Askew,* 66 N. C. Rep. 172, cited and approved.)

CIVIL ACTION, tried before *Mitchell, J.,* at the Spring Term, 1873, of the Superior Court for CALDWELL county.

On the trial below it was in evidence that the plaintiffs were married about the year 1852, and had now children nearly twenty-one years old ; that the *feme* plaintiff was one of the heirs at law of one Aquilla Payne, who died in the year ——, before 1868, and as such became possessed of a certain tract of land, which in the year 1868, she and her husband conveyed by deed to one Walter Payne, her brother, with a verbal understanding between the three that the proceeds of the said sale was to be to the sole and separate use of said Margaret, and was to be paid to her for the purpose of enabling her to purchase another tract of land for a home for herself and family; that in accordance therewith the money was paid to her, and kept by her solely and exclusively for the purpose above set forth.

That the said Walter paid the *feme* plaintiff four hundred and fifty dollars, to-wit : $200 in money and a mule and wagon valued at $250. This mule, with the consent and under the direction of the *feme* plaintiff, was taken to another county and exchangsd for another mule, and that also for another.

It was also in evidence that by the consent and under the direction of the said Margaret, the *feme* plaintiff, Walter Payne, as her agent, entered into a verbal contract with the

defendant, Downs, thereby purchasing the tract of land mentioned secondly in the complaint for $300, and in payment thereof, delivered to Downs the mule and wagon and paid him $60 in money. This contract with Downs had never been rescinded nor modified, nor had any of the price paid for the land ever been paid back, though the plaintiff, Teague, swore that he had afterwards purchased back the mule from Downs; that the defendant at the time of the trade with him was informed that it was made on behalf of the *feme* plaintiff alone, and the land paid for her out of her separate property, and that he then agreed to make the deed to her alone; that defendant had been called upon to make the deed and had refused to do so, and had sold the land to another. The foregoing facts were disposed to by the plaintiffs and by said Walter Payne.

Defendant, as a witness, testified that the trade was made with Teague, and not his wife; that by the payment of the money and delivery of the mule and wagon, the purchase money was paid up, and he was ready to convey; but that he discovered that the mule was old and unsound, and that Teague agreed to take the mule back, paying his value in money. That he, Teague, did take the mule back at the same price he, the defendant, had paid, to-wit: $120, and had paid $45 thereof, and afterwards agreed with defendant to rescind the verbal contract concerning the land; that it was so rescinded and defendant was to repay to Teague the sum paid for the land; that before he, the defendant, had repaid Teague, judgment was rendered against the defendant in certain proceeding supplemental to execution, instituted by one Roberts against Teague for $123.50 and costs, which the defendant as debtor to Teague had to pay. The record of this judgment was also in evidence.

The defendant insisted:

1. That any verbal evidence of the contract between plaintiffs and Walter Payne, at the time the trade was made

with him for the land of the *feme* plaintiff was inadmissible under Statute of Frauds.

2. That as Teague was tenant by the curtesy of his wife's land, he was entitled to the same in the fund arising from its sale.

3. That personal property accruing during the coveture, under the circumstances alleged belonged to the husband.

4. That the suit was the wife's and the husband ought to be defendant.

5. That as the husband was tenant by the curtesy before the adoption of the present Constitution of the State, it could not divest his rights.

His Honor charged the jury that if the contract between plaintiffs and Payne for the wife's land, and the contract between the *feme* plaintiff and defendant were made as alleged and deposed to, and the defendant had received the price agreed on, and had refused to make title, the plaintiffs would be entitled to recover. To this defendant excepted.

Several issues were submitted to the jury involving the facts alleged in the complaint, which were found in favor of the plaintiffs, and in accordance with the verdict, the Court on motion gave judgment in their favor for $300 and costs.

From this judgment defendant appealed.

*Folk*, for appellant:

The action is to recover the money paid, and property delivered to defendant on the ground that the contract was void, and the question is, whose money and property is it?

1st. Husband was tenant by the curtesy initiate of the land sold to Payne, consequently he had the same interest in the proceeds of the land, which he had in the land. *Wil-*

TEAGUE and wife v. DOWNS.

*liams* v. *Lanier*, Busb. Law, p. 30. *Smith* v. *Smith*, Winston Law and Equity, p. 31. *Forbes* v. *Smith*, 5 Ired., p. 369.

2nd. But the entire proceeds of the land belonged to the male plaintiff. For money accruing from the sale of the wife's land by a proper conveyance from husband and wife, loses the character of real estate and belongs to the husband *jure mariti*. *Rouse* v. *Lee*, 6 Jones Equity 352. *Temple* v. *Williams*, 4 Ired. Equity 522, and no agreement or transaction between husband and wife, can be proved by parol to support a settlement made after marriage in obstruction of husband's creditors. Revised Code, ch. 37, sec. 26, *Sanders* v. *Ferrell*, 1 Ired. 97. It is submitted there is nothing in the State Constitution which can effect this question.

1st. The husband had a vested right in the land, the same in its proceeds, of this the Constitution cannot deprive him. Cooley's Con. Lim., 2 Ed. 360 and 361.

2nd. The marriage was a contract, solemnized before the adoption of the Constitution, and cannot be affected by that instrument, so far as that contract confers rights of property. *Sutton* v. *Askew*, 66 N. C. Rep., p. 172.

If secret agreements between husband and wife, may alter marital rights throughout a series of conversions of property, the effect on creditors and purchasers would be startling.

*Armfield, contra:*

The Constitution provides in art. 10, sec. 6, that "the real and personal property of any female in this State, acquired before marriage, and all property, real and personal, to which she may, after her marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable to any debts, obligations or engagements of her husband  *  *

* * and may be, with the written assent of her husband, conveyed by her," &c.

In this case the land of the wife was conveyed by her, her husband guaranteeing to pass the title, to her brother, Walter Payne, in the Fall of 1868, after the adoption of the present Constitution of the State, and then became "personal property to which she became entitled" at that time, and therefore, "her sole and separate estate," and "not liable to any debts, &c., of her husband."

The above clause of the Constitution is unrestricted in its operation as to marriages prior, or subsequent, and applies by its terms to one as well as the other, and the Court will not restrict or limit it unless it be necessary to do so to prevent a conflict with some higher law; but there is no higher law, unless it is the written Constitution of the United States, and it cannot be supposed to conflict with anything in that instrument, unless it be the prohibition in art. 1, sec. 10, on every State from passing any law impairing the obligation of contracts; or unless it conflicts with some other provision contained in itself, and there is none that it can be supposed to conflict with unless it be sec. 17, of the Declaration of Rights, which provides that "no person shall be deprived of his property but by the laws of the land."

As to the first objection: The husband was not tenant by the curtesy initiate by contract. See *Norwood* v. *Marrow,* 4 Dev. and Bat. 442; and if he was he expressly waived that contract by joining in the conveyance to Payne, and the agreement that the proceeds should belong to his wife. The same answer may be given to the second objection for "*Injuria volente non fit.*"

If the husband had an interest in the land sold to Payne, as "tenant by the curtesy initiate," it was an incobate interest. See *Sutton* v. *Askew,* 66 N. C. Rep. 172, and it was not subject to his debts, nor could it be conveyed or leased by him for his life or for a term of years. See Revised Code,

chap. 56, sec. 21, p. 328, (passed Session 1848, chap. 41.) And it would follow that when it was converted into per-sonalty in the Fall of 1868, and the husband assented thereto, and that said personal estate should be her separate property, he did nothing of which his creditors could complain, but it does not appear that he had any creditors when he did this, therefore it was no fraud under 13th Elizabeth.

PEARSON, C. J.  At the common law a husband by the marriage acquired all of the wife's personal things in possession" absolutely, and he acquired an estate during the coveture in her things real in possession, and was seized in her right of the fee simple; on the birth of a child born alive he became entitled as "tenant by the curtesy initiate"' to an estate for his life in his own right, and was seized of the reversion in right of the wife.   This life estate he could sell, charge with a term for years and by force of the statute, Rev. Code, ch. 45, sec. 1, it could be sold under execution for any "just debt, duty or liability."

In this state of the law it is clear that the husband being in debt or subject to a duty or liability could not have surrendered his life estate as tenant by the curtesy initiate to his wife, so that it might merge in her reversion without a violation of 13th Elizabeth as a voluntary conveyance in fraud of creditors.

By Rev. Code, chap. 56, sec. 1, (Act 1848,) it is provided, "no real estate acquired on or since the first day of March, 1849, by *feme coverts*, who were such on the third Monday of November, 1848, shall be subject to be sold or leased by the husband for the term of his own life or any less term of years, except by the consent of the wife, and no interest of the husband whatever in such real estate shall be subject to sale to satisfy any execution against them."

As the marriage in this case was solemnized after the year 1848, no question can be made as to the application of

the statute, it follows that as the creditors of the husband had no right to subject this estate to the satisfaction of debts, he was at liberty, if so minded, to surrender his estate, and let it merge in the reversion of the wife, and consequently when she sold the land to Walter Teague, the whole estate passed from her, and she with the assent of the husband, was entitled to receive the whole of the price.

Assuming this to be so, it was urged for the defendant, that although the wife could take she could not hold, for as soon as the mule, wagon and money (the price of the land) was received by her, the title vested in the husband *jure mariti*, and hence it was inferred that the defendant was under no obligation when he elected to avoid the contract of sale for the tract of land that Mrs. Teague wished to acquire to repay to her the articles and money which he had received of her agent, and was protected by the judgment to which he had submitted on the supplemental proceedings against the husband.

Had the wife sold her land and received in payment the mule, wagon and money, without any understanding in regard to it, the *jus mariti* would have vested the title in the husband, and the inference contended for by the defendant would have followed, but there was " an understanding in regard to it," and it was expressly agreed that as the purpose was to convert the land inherited by the wife from her father into another tract of land that would suit her better, the husband relinguished all claim to the price she was to get for her land, to-wit: the mule, wagon and money, and allowed it to be her separate property to be invested in the purchase of another tract of land. To this, it is objected, husband and wife are in law one person and no understanding or agreement between them has any legal effect against creditors except marriage settlements, and marriage contracts in writing and registered. Rev. Code, chap. 37, sec. 24. The facts do not make a case of a *marriage settlement* or

*marriage contract* within the meaning of this statute, for we have simply an understanding, agreement or contract (call it as you please) by which the husband consents that the wife may convert one tract of land, *which is in no wise subject to the claims of his creditors,* into another tract of land; and in order to enable her to make the conversion he stipulates to allow her to hold as her separate property the price of her land until it can be reinvested in another tract of land.

This is all "plain sailing," and it is only disturbed by the fact that the defendant (when he elected to repudiate his verbal contract of sale instead of repaying to Mrs. Teague the price which he had received from her through her agent, Walter Teague,) confessed (contrary to the fact according to the issue found by the jury) that he held the money and wagon as the property of the husband, and allowed the creditor, Roberts, to take judgment against the property in his hands without suggesting the fact that the fund was claimed by the wife as her separate property, of which he had full notice. This was his folly, or an attempt on his part to commit a fraud, and the consequences must fall on him.

Let it be admitted that should a husband, married in 1852, his marital rights being fixed by the law as it then stood, *Sutton* v. *Askew,* 66 N. C. Rep. 172, in anticipation of the death of his wife's father, agree to let the wife have her distributive share for her separate use, such agreement must be in writing duly registered and that as against creditors it must also be proved that the husband's estate was competent to pay his debts. Revised Code, chap. 37, sec. 25. Ours is not that case, for here the wife had the one tract not subject to the creditors of her husband and the amount of the agreement was that the husband consented to allow the one tract to be converted into another and to this end, that

she might hold the price of the first tract as her separate property until it could be reinvested.

This agreement did not at all affect or concern the rights of creditors, and putting creditors out of the case, there is no farther difficulty, for in respect to the dogma, that husband and wife are one person, and the wife cannot hold personal property as her separate estate without the intervention of a trustee, the Constitution of 1668, art. 10, sec. 6, makes a radical change and allows married women to take and hold property as well in respect to marriages before as after that date—except where, as in *Sutton* v. *Askew,* sup., the husband's right to sell his own land is to be clogged by the necessity of getting his wife's consent, in other words paying a fine for the privilege of alienation, or where the rights of existing creditors are injuriously effected.

The objection that Teague, the husband, should have been made defendant instead of the plaintiff, as his interests are adverse to that of the wife, was fully met by the position of Mr. Armfield, that under C. C. P. it makes no material difference whether a party is plaintiff or defendant, as the Court can give affirmative relief and the judgment is a final determination of the rights of all of the parties.

There is no error.

PER CURIAM.                                 Judgment affirmed.