R. McCASKILL v. D. McCORMAC.

*Tenant by the Curtesy—His Interest liable to Execution.*

The interest of a tenant by the curtesy consummate, in land of which his wife died seized, is liable to sale under execution.

ACTION OF EJECTMENT, tried before *Clark, J.,* at May Term, 1887, of the Superior Court of ROBESON County.

The plaintiff offered in evidence a judgment in favor of R. McCaskill, executor of Malcom Powell, against the defendant, an execution issued on such judgment, a levy on the

McCASKILL v. McCORMAC.

lands described in the complaint, sale of the same by the Sheriff, and Sheriff's deed (deeds) conveying said lands to plaintiff, as purchaser at said sale, and dated June 1st, 1885— one conveying all the lands of the said defendant, outside of his homestead, and the other conveying homestead of the defendant. The plaintiff also offered in evidence the allotment of homestead under said execution.

It was also in evidence, that the debt upon which said judgment was obtained, was contracted prior to 1858 ;  *  *  *  * that the land and interest sold under said execution was the interest of, and estate of, the defendant, Dugald McCormac, in the same.

There was evidence tending to show that the land set out in the complaint was devised in fee to ........ McCormac, wife of the defendant, Dugald McCormac, about 1862, and was the residence land (maiden land) of said wife. The said Dugald McCormac and wife, ........ McCormac, intermarried in 1859, and had issue born of this marriage ;  *  *  * that the said ........ McCormac, wife of said Dugald McCormac, died in November, 1878, leaving children now living, and under twenty-one years of age.

" There was also evidence tending to show that the defendant was in possession of the land described in the complaint.

"The defendant requested his Honor to charge that the defendant had only a title as tenant by curtesy in said land, that the same was not liable to sale under execution, and that the plaintiff could not recover; which instruction his Honor refused to give, and instructed the jury, that if they believed the evidence, they should find for the plaintiff."

There was a verdict and judgment for the plaintiff, and appeal by the defendant.

*Mr. T. A. McNeill,* for the plaintiff.
*Mr. W. F. French,* for the defendant.

McCaskill *v.* McCormac.

Davis, J., (after stating the facts as above). The single, and only question before us, is as to whether his Honor was correct in refusing to give the charge asked for by the defendant.

It is insisted for the defendant, that under the Act of 1848 (*Code*, § 1840,) the sale made by the Sheriff, under which the plaintiff purchased, was void. Under the provisions of that Act, no real estate belonging to a married woman " shall be subject to be sold or leased by the husband, for the term of his own life, or any less term of years, except by and with the consent of the wife, first had and obtained, to be ascertained and effectuated by deed and privy examination, according to the rules required by law for the sale of lands belonging to *femes covert*. And no interest of the husband whatever in such real estate shall be subject to sale to satisfy any execution obtained against him, and every such sale is hereby declared null and void."

The only authority cited by the learned counsel for the defendant, to sustain the construction contended for by him, is *Jones* v. *Carter*, 73 N. C., 148. Whether or not the effect of the Act of 1848–'9, " is to deprive the husband of his right to acquire an estate for life as tenant by the curtesy *initiate*," which is all that was involved in the case of *Jones* v. *Carter*, it has never been claimed or held, that the Act deprived him of his right to the estate for life, in the lands of the wife after her death, as tenant by the curtesy *consummate*.

It is well settled to the contrary. The Act (Acts 1848–'9, Chap. 41,) is entitled: " An Act making better and more suitable provision for *femes covert*," and the clear and manifest purpose of it was to protect and preserve the rights of the wife during her life, and prevent any disposition of her lands, by reason of the husband's rights as tenant by the curtesy *initiate*, without her assent, evidenced by her privy examination.

We understand it to be conceded that this is so as to the first sentence in the Act, which relates to the sale or lease by the husband, because the privy examination of the wife can only be had during her life, but it is insisted that it does not apply to the following sentence, which prohibits the sale under execution. Aside from the language of the sentence, "no interest of the husband whatever in *such real estate*"—clearly meaning such interest only as is embraced in the first sentence—the "reason of the thing" is against the construction insisted upon by the defendant.

But we think it is settled, by abundant authority, that the purpose of the Act was to protect the wife, leaving the right of the husband, and of course his liabilities, unimpaired and unrestricted after her death. This construction is too well settled to be disturbed now. *Houston* v. *Brown*, 7 Jones, 161; *Long* v. *Graeber*, 64 N. C., 431; *Teague* v. *Downs*, 69 N. C., 280; *Wilson* v. *Arentz*, 70 N. C., 670; *State* v. *Mills*, 91 N. C., 581; *Morris* v. *Morris*, 94 N. C., 613, and the cases cited.

There is no error.　　　　　　　　　　　　　　Affirmed.