JOHN W. KIRKMAN, Administrator, v. THE BANK OF GREENS-
BORO.

*Married Women—Right to Receive their Property not Restricted.*

1. The constitutional and statutory restriction upon the rights of married
women in regard to the management of their separate estate, does not
operate to prevent them from receiving or reducing their property into
possession without the written assent of the husband.

2. Where an attorney collected money due a married woman as distribu-
tee of a decedent's estate and paid the same in a certificate of deposit
on a bank, and the bank subsequently paid her the amount thereof;
*Held,* that the husband as administrator of his wife could not recover
the amount of the certificate from the bank, on the ground that his
written assent to the transaction had not been obtained.

CIVIL ACTION tried at Spring Term, 1877, of GUILFORD Su-
perior Court, before *Cox, J.*

The plaintiff, John W. Kirkman, married Nancy E. Cly-
mer in 1858, who was a widow with two children—namely,
Joseph Clymer and a daughter, who married Henry A. Wil-
son.

The said Nancy in 1872, was a distributee of a certain
estate, and as such was entitled to the sum of $690. In the
settlement of this matter in 1873, Messrs. Dillard & Gilmer,
her attorneys, deposited said amount with the defendant
Bank, and took a certificate of deposit which they turned
over to her, and she held the same more than six months.

The said Nancy died intestate on the 12th of February,
1875, and the plaintiff was duly appointed her administra-
tor. He then demanded of the defendant payment of the
amount of the certificate. The other facts necessary to an
understanding of the case are stated by Mr. Justice READE in
delivering the opinion of this Court.

Upon issues submitted, and under the instructions of His

Honor, the jury rendered a verdict for the defendant. Judgment. Appeal by plaintiff.

*Messrs. Scott & Caldwell*, for plaintiff.
*Messrs. Scales & Scales*, for defendant.

READE J. Under the Constitution the real and personal property of the wife "shall remain and be her sole and separate estate, * * * and may be devised and bequeathed, and with the written assent of her husband, conveyed by her as if she were unmarried." Const. Art. 10, § 6.

No power whatever is given to the husband, and no restriction upon the wife, except as to the "conveyance" of the property to take effect during her life, which requires the husband's assent in writing.

The statute which was intended to carry out the constitutional provision uses somewhat different language : "No woman during her coverture shall be capable of making any contract to affect her real or personal estate, without the written consent of her husband." Bat. Rev. ch. 69, § 17.

It is not worth while to consider whether the Legislature could restrict or enlarge the rights of the wife or of the husband, as they are declared in the Constitution, because it is evident that the Constitution and statute are in harmony, and mean the same thing—to make the wife's property her own as if she were unmarried, without the power of sale, or charge, to operate during her life, without the husband's written consent.

Does the constitutional restriction against her "conveying" her property, or the statutory restriction against her "making any contract to affect it" without the written assent of the husband, operate to prevent her from acquiring, receiving, or reducing her property into possession without his written assent?—Can the husband, by withholding his written assent, prevent the wife from reducing her

property into possession ?—If I have her property, may I
not deliver it up to her ?—If I owe her a debt, may I not pay
her ?—Undoubtedly ; else instead of making the wife's prop-.
erty her own, " sole and separate," she would be completely
at the mercy of her husband.

If she had not the right to *receive* her property in this
case, then she never has received the $690 from anybody,
from the administrator, from Messrs. Dillard & Gilmer, nor
from the Bank.   They all owe it to her now, and her ad-
ministrator had his choice to sue any of them.   But if she
had the right to receive it from the administrator, from
Messrs. Dillard & Gilmer, or the Bank, then she has received
it, and her administrator cannot recover it.

Messrs. Dillard &' Gilmer owed her $690 which they had
collected for her of an administrator, and they for safety and
convenience deposited the money in Bank, the defendant, to
her credit, and took a certificate of deposit as evidence that
they had done so ; and in the presence of her husband, and
with his *oral* but not his *writ'en* assent, they delivered to her
the certificate of deposit and she gave them a written re-
ceipt for the amount, which receipt was witnessed by her
husband.

In that $690 which they had collected for her and which
they owed her, she had a property, and in some sense the
discharging them and taking the Bank in their place was a
" contract affecting her property," and yet it would seem
monstrous to hold that by that transaction she had " con-
veyed " her property to them in the sense used by the Con-
stitution, or made a " contract with them affecting it," in the
sense used by the statute.   They owed her a debt and paid
it to her, that was all.

Now suppose she had gone immediately to the Bank with
the certificate and drawn the money and given up the cer-
tificate, how could that have differed from the transaction
with Messrs. Dillard & Gilmer ?   Not at all.   In both cases

KIRKMAN *v.* BANK OF GREENSBORO.

she was "receiving" her property, and not "conveying" or "disposing" of it.

If she could have gone to the Bank and received the money with her own hands, she could have sent an agent just as well; and that is just what she did. At one time she sent her son to the Bank with the certificate and with a written order to the Bank to pay her son $300 "for her," which the Bank did, and endorsed the payment on the certificate and sent it back to her. Subsequently there was another payment of $90 endorsed on the certificate, but it is not stated to whom the payment was made, as there had also been a prior payment of $20 endorsed. And finally the certificate was sent by another son, or son-in-law, to the Bank with the following endorsement. "Mr. Gray: Please pay the amount of this note to H. A. Wilson. Yours, Nancy E. Kirkman." And the Bank paid the money and took up the certificate.

Now in all this, what property did she "convey" to the Bank, or what contract did she make with the Bank affecting her property? It is admitted that the payments of $20 and $90 were for her; the order for $300 stated expressly that it was for her, and the endorsement requesting the balance to be paid to Wilson, only made him her *agent* to receive it, the certificate not being negotiable, being payable in currency. So that the Bank paid the whole of it to her, or her agent.

But then it is said that notwithstanding that, yet she in fact received the money and gave the $300 to one son and the balance to another son or son-in-law. Grant that to be so, and yet it does not affect the defendant. The defendant knew nothing of that fact and was not obliged to look to the use made of the money after she had received it.

It should be noticed that this is not the suit of the husband in his individual right, but as administrator of his wife, and as such he has no right which she would not have

if she were alive and the plaintiff in this action. And having received her property from the Bank by herself or her agents, or by persons whom she induced the Bank to believe were her agents, and having "conveyed" nothing to the Bank, she could not recover.

We have laid but little stress. upon the issues or the finding of the jury, because they are so confused as to be unintelligible. We have gathered the facts as best we could from the whole record.

There is no error.

PER CURIAM.                                    Judgment affirmed.