WILLIAM B. HOLLIDAY, Adm'r, v. ANDREW McMILLAN and another.

## *Separate Estate of Married Women.*

Where a marriage took place prior to the adoption of the constitution of 1868, and in 1871 the wife acquired certain personal property, it vested in her as her separate estate, free from "the debts, obligations or engagements of her husband."

(*Sutton* v. *Askew,* 66 N. C. 172; *Kirkman* v. *Bank of Greensboro,* 77 N. C. 394, cited and approved.) (RODMAN, J. *Concurring:* Remarks upon the decision in *Sutton* v. *Askew,* and suggests that it be overruled.)

CIVIL ACTION tried at the Fall Term, 1877, of RICHMOND Superior Court, before *Seymour, J.*

This action was originally brought by the wife of the plaintiff against the defendants, for the possession of certain personal property taken by them under an execution against her husband, and she having died the plaintiff administered on her estate and made himself party plaintiff. The plaintiff and his late wife intermarried before 1868. The

property seized under the execution was given to plaintiff's intestate by her father in 1871, and they were living together and using said property at the time it was seized.

The Court charged the jury that the husband, having married before 1868, had a right to his wife's personal property, even though afterwards acquired, and it was not divested by the provisions of the constitution of 1868, and that therefore the property seized under the execution was the property of the defendant in the execution. Under these instructions the jury rendered a verdict for the defendants. Afterwards the plaintiff moved for a new trial which His Honor granted on the ground of misdirection in law in his charge as above set forth, and ordered the verdict to be set aside, and the defendants appealed.

*Messrs. J. D. Shaw, N. McKay* and *J. W. Hinsdale,* for plaintiff.

*Messrs. W. H. Bailey, J. Devereux, Jr., Dowd & Walker* and *G. M. Smedes,* for defendants.

READE, J. Prior to 1868-'69 a widow was entitled to dower in the land of which her husband died, seized and possessed, and not as at common law of all the land of which he had been seized at any time during coverture. The act of 1868-'69 restored the common law right of dower. In *Sutton* v. *Askew,* 66 N. C., 172, it was held that the act of 1868-'69 did not operate to give the wife an inchoate right of dower where the marriage was before the statute, and the husband owned the land at the time of the marriage or before the statute, but that in such case the husband had the right to dispose of the land by sale free of any dower right of the wife at any time during his life. How it would be where the marriage was before the act and the land acquired after the act, was left an open question, with a slight intimation that in such case the dower right would attach.

Our constitution of 1868 secures to the wife's separate use all the property which she should acquire. In *Kirkman* v. *Bank of Greensboro*, 77 N. C., 394, it was held that where the marriage was before the constitution and the wife acquired property after the constitution, she had the right to receive it independently of her husband. It is true that the question then was as to the wife's right to receive into her possession, without the concurrence of her husband, a distributive share of her ancestor's estate, but the decision could not have been arrived at without deciding that she had in it a separate property.

In the case before us the marriage was before the constitution and the property acquired after the constitution. And the question is, whether by the marriage the husband acquired a vested right, not only in all the personal property which the wife had at the time of the marriage, but in all the property which she might acquire during coverture. The argument for the defendants is that the marriage contract was, that the husband should have all the property which the wife then had or should thereafter acquire, and that that contract could not be impaired by legislation or by the constitution; that he had a *vested right* in property which the wife might acquire *after* the marriage, as well as in property which she had at the *time* of the marriage, and that subsequent legislation could not deprive him of his *vested* rights.

It is too well settled to require either argument or authority, that *vested rights* can not be disturbed, but it is error to suppose that a mere expectancy, or a possibility of future acquisitions is a *vested right.*

The following proposition is well supported by Cooley's Const. Lim., 360-1-2, and by numerous authorities which he cites: At the common law the husband immediately on the marriage succeeded to certain rights in the real and personal estate which the wife then possessed. These

rights became vested rights at once, and any subsequent alteration in the law could not take them away. But other interests were merely in expectancy. And while these interests remained in expectancy, the legislature had full power to modify or even to abolish them. They are sub-ject to any changes in the law made before the rights be-come vested by acquisition.

That is conclusive of this case. The property in dispute was acquired after the marriage, and before it was acquired the constitution provided that all after acquired property by the wife should be her separate property. His Honor charged the jury contrary to this doctrine and there was a verdict for the defendants. Becoming convinced of his mistake he set aside the verdict and ordered a new trial, so that there is no verdict upon which we can give judgment here. We must therefore affirm the order for a new trial.

It is insisted by the defendant that there is no use in allowing the plaintiff to recover, because if he do, the property will be immediately subject to the satisfaction of the defendant's debts against the plaintiff—the plaintiff being the administrator of his deceased wife in whose name the suit was originally bought. That may or may not be so. He must however recover the property, to be administered according to law. We do not know what may be the liabilities of the wife's estate, and we cannot administer it in this action. The claims of the defendants are not against the wife's estate, but against the husband plaintiff in his individual capacity. And they are neither sets-off nor counter-claims in this action.

There is no error. The order below setting aside the verdict and granting a new trial is affirmed.

RODMAN, J. *Concurring.* I concur in the decision in this case, but my reasons are so different from those of the Court as stated by my brother READE, that I think I ought

to give mine, lest his reasoning should be taken for a part of the decision, and thus apparently give the sanction of the Court to the affirmation of a case cited, which I think is erroneous, and ought to be reviewed at the earliest opportunity. If the doctrine upon which *Sutton* v. *Askew*, 66 N. C., 172, is founded, and by which it must be supported, if it can be supported at all, is correct, then this case is decided wrongly. This doctrine is that a wife during her husband's life has a *vested estate* in his land by way of dower which the legislature can not enlarge, abridge, or alter without his consent, or with his consent as against his creditors, by any act passed after the marriage. If the estate of the wife in that case be vested and beyond the legislative power, it seems clear that the right of the husband to possess as his own the acquisition of personal property by his wife during the marriage, is equally a vested right beyond the power of the legislature, and that his creditors may subject it to execution for his debts. The mutual rights of the husband and wife are precisely analogous in both cases; they arise by act and operation of law out of the marriage relation ; if they are *vested* rights they could not be altered or affected by the acts of 1868-'69 restoring to widows their dower at common law, or by the constitution of 1868 and act of 1871-'72 giving to wives separate estates in their future acquisition of personal property, and the decision in the present case is wrong; if not vested they were both subject to legislative enactment and *Sutton* v. *Askew* is wrong.

I shall endeavor to show that they were not vested and that the decision in *Sutton* v. *Askew*, was founded on a mistaken view of what constitutes a vested right.

The facts of that case as taken from the printed report are in brief these : Askew and wife were married before January, 1867. In 1870 he was the owner of certain land, when he acquired it does not appear. He proposed to bor-

row $2,000 of one Holly, who refused to lend unless Askew's wife would join in a mortgage of the land. She consented to do so in consideration of an agreement by her husband that she should have to her separate use all that the land should sell for above the debt to Holly, and the mortgage was made. Afterwards the land was sold for $3,400, all of which, except a note of the purchaser for $500, was applied to paying the mortgage debt and other debts of the husband. After the mortgage the plaintiff recovered a judgment against Askew—the date of his debt, whether before the marriage or before the act of 1868, 69, or not, does not appear—and instituted a supplemental proceeding to subject the note for $500, held and claimed by Mrs. Askew, as the property of her husband.

It was assumed by this Court without any authority so far as appears in the statement of the case by the Reporter, that the husband acquired the land before 1868. It was also assumed in the like absence of apparent authority that the plaintiff's debt accrued before 1868. On these assumptions (which may perhaps be justified by the unprinted record on file) the Court concluded that the act of 1868,-'69, restoring to married women their dower at common law, was void as to the husband, and although he did not oppose but consented to the wife's claim, was void as to his creditors : That the act was valid only as to marriages contracted after its passage, and that the wife's right of dower was even during her husband's life time, a vested estate, or at least a vested interest which the legislature could not constitutionally enlarge, abridge, or alter.

If we consider the case as a controversy between the husband and wife on the one side, and the creditors of the husband on the other, as it really was, no reason can be assigned why the principle of *Hill* v. *Kessler*, 63 N. C., 437, should not have controlled the decision. It was there held that the legislature might constitutionally exempt a debtor's

land to the value of $1,000, and his personal property to the value of $500, from liability for his debts previously incurred, and secure the land to him as a homestead against his creditors. Why could not the legislature by virtue of the same power enlarge the dower right of a wife against her husband's creditors? Passing this by, however, and taking the case to be as the Court assumed it, a controversy between the husband and wife, in which he denied the power of the legislature to enlarge the right of his wife to dower, on the ground that it was a vested right in him, that it should not be enlarged in her, that it should not be diminished, and in both, that it should not be in any wise altered during the coverture, and the Court held that by reason of this vested right the husband might sell his lands without the consent of his wife, free from the incumbrance of her dower, notwithstanding the act of 1868,-'69, that the wife had no interest, the release of which was a valuable consideration to support the agreement of her husband that she should have the $500, as she should have had if her right to dower had been as at common law, and that the agreement was void as to his creditors. Such I understand to be the conclusion and reasoning of the Court in the case of *Sutton* v. *Askew.*

I conceive that the right of a wife to dower during her husband's life, can in no just sense of the words be called a vested estate or a vested right. Bouvier in his Law Dict. under the word "Vest," says, "an estate is vested in possession when there exists a right of present enjoyment," and, "an estate is vested in interest when there is a present fixed right of future enjoyment." For these definitions he cites many acknowledged authorities, to which I will add a few, more recent:—

In *Johnson* v. *Van Dyke*, 6 McLean, 422, cited in 1 Scribner on Dower, McLEAN, J., speaking of an inchoate right to dower, says: "Until the death of the husband the right

—if it may be called a right—is shadowy and fictitious, and like all rights which are contingent, may never become vested." See also *Moore* v. *City of New York,* 4 Seld., 110, and 1 Scribner, 6 &c. Bishop (1 Law of Married Women, § 348) says that the wife's right to dower during her husband's life " is a mere possibility. Not only is it no estate, but the right itself is a mere contingent possible thing," and he cites *Maguire* v. *Riggin,* 44 Mo., 512. It certainly seems a plain misuse of terms to call a right *vested,* which may never exist as an estate, which may be forfeited by the misconduct of the wife, and is contingent upon her survivorship. A vested right may be sold, but a wife, though she may *release* her right to dower during her husband's life, can not assign it, neither can it be taken in execution for her debts.

I have not seen the reasons any where stated definitely and tangibly why this right should be regarded as vested, or if not strictly and technically vested, yet partaking so far of the nature of a technical vested right as to be incapable of change by the legislature, or why it should be less within the control of that department of the government than any of the other rights and duties which arise directly and indirectly from marriage. It may be true as suggested that if it be a vested right in the sense used above, it is immaterial for what reasons it is so. But when the question is,—is it a vested right?—is it beyond legislative action?—it is very material to know the reasons for which it is supposed to be so. If we attempt to put in clear and definite language the reasons which are hinted or suggested in Scribner, and elsewhere, they will be seen to take one of the three following shapes :—

1. The rights, &c., arising from marriage are those which are embraced in the words of the ceremony of marriage. It is clear that this can not be so. No formula of marriage used by any Christian minister or officer pretends to con-

tain or provide for the whole or the hundredth part of those rights, &c. In the formula of one church and perhaps of many, the groom under the direction of the priest, says to the bride; "With all my worldly goods I thee endow," when it was notorious that until the constitution of 1868 he did not give her any goods, but got every dollar which she possessed, which he might squander, or his creditors might seize as he left the church.

2. That the law at the date of the marriage controls, and that rights accrued under and by force of that law, which although not technically vested, and left by the law uncertain and contingent, were yet so far vested as to be beyond the power of change. This merely confuses all distinctions between rights which are vested and those which are not, and would make any immediate change in *any* law impossible. No doubt most persons marry with the expectation that the law governing their matrimonial relations will continue indefinitely without substantial change. But the public interest will not permit expectations to arrest the progress of society.

3. These two propositions being separately too untenable to be defended, they may be combined into the third, and perhaps in union find strength. Thus combined the reasoning is expressed thus:—

Marriage is the result of contract, whatever else it may be, or may result in; in that contract is contained by necessary or rightful implication, that the respective rights and duties of the parties *inter se*, personal and pecuniary, direct and indirect, shall remain unchanged by any change in the law during the coverture. Or if any advocate for the doctrine of *Sutton* v. *Askew* prefers it, I will narrow the proposition so as to include only this particular right to dower, although I can not see any reason why if it includes one incident of the marriage it should not include all; or why if it includes the direct incidents of the marriage such

as the mutual rights of the parties in each other's property
while living and the succession of the property after the
death of one, it should not equally include the rules for its
succession by inheritance upon divorce, &c.

A slight examination of the legislative and judicial
annals of North Carolina from the earliest period at which
our printed records begin, will show that this State by suc-
cessive legislatures has always regarded marriage · not
merely as a contract but as a social institution, and has
asserted its control for the public welfare over all rights,
duties, and incidents directly or indirectly resulting from
it, including the whole law of succession by which I mean
the devolution of property by act and operation of law upon
the death of an owner, with the sole restriction that it did
not claim a right to interfere with vested interests. This
claim was always upheld by the Courts wherever it was
brought before them.

Our ancestors brought with them from England the com-
mon law of that country which included all such acts of
parliament as from age had come to be regarded as part of
it, and which were not positively inapplicable among us.
This common law included all laws regulating marriage,
inheritance, and the succession to property in general, and
remained unaltered, so far as our printed statutes show,
until 1784. Estates descended to the oldest son, they might
be entailed, dower was of all lands of which the husband
was seized and possessed at any time during the coverture,
there was no dower of trust estates, divorces could be ob-
tained of the legislature only, estates in joint-tenancy went
to the survivor. In most of these subjects the act of 1784
changed the law, children inherited equally, estates tail
were converted into fee simple, the heir apparent in tail
being deprived of his expectancy, dower was limited to
lands whereof the husband *died* seized, joint tenancy was
changed into tenancy in common. All of these subjects

were claimed by the legislature as its just domain, and its claim was disputed by no body except the heirs apparent of entailed estates whose reasonable expectations and those of their creditors were destroyed. This part of the law met with violent opposition from all who retained English aristocratic ideas. In 1798 an action was tried in the Circuit Court of the United States before IREDELL and SITGREAVES, JJ., between David Minge claiming as heir in tail of his father, against Gilmour and Hendrie, to whom his father had sold the land in 1779. For the plaintiff it was urged that he had a vested right which the act of 1784 could not deprive him of, and every argument existed in his favor that was used for the plaintiff in *Sutton* v. *Askew*. But the Court held against him. 1 Car. Law Rep. 34. The same case seems to have been tried in the State Court and was decided in the same way. 1 Hay. 279. It was also held that a remainder dependent upon an estate tail was destroyed by the act. *Lane* v. *Davis*, 1 Hay. 277. In 1808 the legislature made material changes in the law of descents, and its power was not questioned. Space will not allow me to do more than allude to the introduction of an allowance of a year's provision to widows which was first given in 1796, or to the changes which the legislature has made from time to time in the distribution of the personal estates of intestates. The history of these may mostly be traced in the Revised Statutes.

Among the most important of the laws which govern the personal rights of married persons *inter se* are those which prescribe the causes of divorce. Until 1814 the Courts had no jurisdiction to decree a divorce; they were granted by the legislature without any rule but its own caprice. In that year the Courts were allowed to divorce for stated causes. Yet it was never supposed that this law did not act on antecedent marriages. As to dower we have seen how the act of 1784 abridged it (unless some act now

lost had previously done so.) In 1828 the legislature enlarged it by giving it in trusts and equities of redemption. On 2d March, 1867, (act of 1866-'67, ch. 54,) the legislature restored to married women their common law right of dower, and provided that it might be laid off in the husband's life time, and in *Rose* v. *Rose*, 63 N. C. 391, (1869) this Court held the act to be valid as against the husband of an existing marriage, and persons claiming in privity with him; how it would be against prior creditors of the husband was left undecided, but was afterwards decided in principle in *Hill* v. *Kessler*. In 1869 (act of 1868-'69, Bat. Rev.) the legislature continued in force so much of the act of 1867 as gave to wives their right to dower as at common law, and this is the act which it was held in *Sutton* v. *Askew* was unconstitutional as applied to existing marriages, because it altered what in that case, and in this, is called a vested right.

It has been seen that the decision in that case was a new departure, that if consistently applied it would have deferred for many years the general operation of many of the most important laws made at various times for nearly one hundred years, during all which time the idea on which that decision proceeds never occurred to any one; but such legislation whenever questioned was sustained by the Courts. I think the introduction of such a novel doctrine into the law of North Carolina would have justified a glance behind and before, at how much that was old and had stood unquestioned, it overthrew; and at how much that was untried, it introduced. I think this Court ought to hesitate long before it incorporates into the law of the State a principle so destructive of the power of the legislature, and if consistently applied, bound to result in such manifold inconvenience.

If the law existing at the date of a marriage is to be deemed a part of the contract so as to be unalterable, then

the wife's inchoate right of dower which by every defini-tion and by every authority without an exception is a mere expectancy, is to be deemed a *quasi* vested right, or a right so far vested as to be beyond legislative change. That is the doctrine of *Sutton* v. *Askew*, and if that doctrine be law, I admit that case was rightly decided. But if that doctrine is law, it must equally apply to any other legal expectancy, as in this case, to the right of a husband to possess himself to his own use of any property which may come to his wife during coverture, which right existed at the date of marriage (before 1868) and was taken away from the husband, and the property made the separate estate of the wife by the constitution of 1868. No difference in principle can be suggested between a wife's inchoate right of dower and a husband's right to legacies or gifts to his wife after the marriage.

In *Johnson* y. *Fletcher*, 54 Miss., 628. (Oct. 1877) the case was that defendant in 1872 recovered a judgment against one Dale; in 1875 an act of the legislature ex-empted from execution property to a certain value ; in 1876 Dale acquired a horse which in that year he sold to plain-tiff; the defendant levied on the horse contending that the exemption was void as to the prior debts of Dale. It was admitted that it was so as to any property possessed by Dale at the date of the act, (1875,) but it was contended that the act was valid as to property acquired after the act, (which is the opinion of the Court in this case) but the Court held that the creditor's right to subject the prop-erty of his debtor to his judgment, extended not only to the property owned by the debtor at the date of his judg-ment, but to all that the debtor might acquire afterwards.

The application of the doctrine of this decision to the present case is this : McMillan (the defendant) had a right to make his debt out of the future acquisitions of Holliday ; if Holliday by the law existing at his marriage acquired

a vested right to the future acquisitions of his wife which no subsequent legislation could deprive him of, according to the principle of *Sutton* v. *Askew*, this right was vested in him for the benefit of his creditors, and as soon as he reduced the property into possession, it might be lawfully seized by his creditors.

If the law be that the laws existing at the marriage can not be altered, we will have in this State very numerous groups of husbands and wives with different rights and duties, depending on the dates of their marriages. A widow married before 1784 if now living would be entitled to her dower as at common law, while she could have no dower in a trust estate and no year's provisions.

I might carry on at any length this picture of the results of the doctrine of *Sutton* v. *Askew*, if it shall be consistently applied. Such a diversity among citizens supposed to live under one law in their most important rights and duties, and all depending on the dates of their marriages, has never existed in any State. And what is to govern the domestic relations of those who immigrate to this State having been married abroad? If the existing law or the domicil is a part of the contract, it must like any other contract follow the parties and fix their personal and pecuniary rights here. Do they bring with them the laws of Germany and England, the Louisiana law of communal property, and the Illinois law of divorce for incompatibility of temper? *State* v. *Barnhard*, in Hurd on Hab. Corp., 26. If it be said that they are governed by the law of this State, the doctrine that the law at the date of the marriage, which must mean at the domicil of the parties, is a part of the contract, must be given up. But the doctrine will not be consistently applied as this case shows. It will stop with the special case; widows married before 1868 (unless the decision shall be plainly reversed, as I think it ought to be) may not be allowed their right of dower as the legislature declared

they should be, the injury may be .circumscribed to that particular right, but I think.no Court will refuse.to a wife married before 1868, the benefit of that clause in the constitution, which secures to. her a separate estate in the property which she may acquire after marriage, nor will any Court deny to any wife the beneficent provisions of the act of 1871,-'72. (Bat. Rev.)

No authority is cited in *Sutton* v. *Askew*, except an opinion of Mr. Scribner in his work on Dower. vol. 1, ch. 1, § 7. He admits (§ 13) that a majority of the cases are opposed to his view, but cites three which he thinks directly support it. *Johnson* v. *Van Dyke*, 6 McLean, 422; (Cir. C. R.,) *Royston* v. *Royston*, 21 Georgia 161; and *Moreaw* v. *Detchmendy*, 18 Mo., 522. He says in note to § 12, that McLEAN, J., who sat in the first case, was inclined to think that an inchoate right of dower might be divested by the legislature, wbich leaves that case to stand upon the authority of WILKINS, J., alone. The Georgia case is not accessible to me. In the case from. Missouri the circumstances were peculiar, and I do not think it supports Scribner's view. After these (§ 20) he relies upon the case in Kernan, already cited, which is not a direct, if any authority as to dower, but is directly opposed to the decision in the present case.

Against these few and uncertain authorities, he cites the following cases which, it seems to me, are clear and convincing. *Jackson* v. *Edwards*, 22 Wend., 498—519 (N. Y.,) *Moore* v. *City of New York*, 4 Sandf. 456, S. C., 4 Seld., 110; *Merrill* v. *Shellburne*, 1 N. H. 199, 214; *Melozets* Appeal, 17 Pa. St., 449; *Weaver* v. *Gregg*, 6 Ohio, 548; *Noel* v. *Ewing*, 9 Ind., 37; *Strong* v. *Clem*, 12 Ind., 37; *Lucas* v. *Sawyer*, 17 Iowa, 517. To which may be added *Ware* v. *Owens*, 42 Ala., 212.

It is thus seen that this Court stands almost if not quite alone, in its denial of the legislative power over inchoate rights of dower. It is because I thought that an inchoate

right of dower is not a vested right, that I dissented from *Sutton* v. *Askew*, and it is because I think that the husband's right to reduce into his possession, the future acquisitions of his wife is not a vested right, that I concur in the decision in this case.

PER CURIAM.                              Judgment affirmed.