SALLIE MORRIS v. AUGUSTIN MORRIS, et als.

*Husband's Rights in Wife's Property.*

1. Marriage, prior to the adoption of the Constitution of 1868, conferred on the husband the *vested right* to reduce into possession and convert to his own use, the personal property of the wife, belonging to her at the time of the marriage.

2. But this marital right does not attach to personal property acquired by the wife after the Constitution of 1868 went into effect, even in cases when the marriage took place before that time.

3. By marriage and the birth of issue capable of inheriting, the husband became tenant by the courtesy of his wife's land, and entitled to the rents and profits thereof.

4. This was not altered by the Act of 1849. The Code, §1840—as to marriages which took place after the Act went into operation.

5. When payment is not unreasonably delayed or neglected by the administrator or executor, and he has not refused to refer the matter in controversy, pursuant to The Code, §1426, no costs will be awarded against him.

(*Kirkman* v. *Bank of Greensboro*, 77 N C., 394; *Citizens' National Bank* v. *Green*, 78 N. C., 247; *Holliday* v. *McMillan*, 79 N. C., 315; *O'Connor* v. *Harris*, 81 N. C., 279; *Williams* v. *Lanier*, Busb., 30; *Halford* v. *Tetherow*, 2 Jones, 393; *Childers* v. *Bumgarner*, 8 Jones, 297; *McGlenery* v. *Miller*, 90 N. C., 215; *Osborne* v. *Mull*, 91 N. C., 203; *Houston* v. *Brown*, 7 Jones, 161; *Long* v. *Græber*, 64 N. C., 431; *Jones* v. *Carter*, 73 N. C., 148; *Wilson* v. *Arentz*, 70 N. C., 670; *Jones* v. *Cohen*, 82 N. C., 75; *State* v. *Mills*, 91 N. C., 581; *May* v. *Darden*, 83 N. C., 237, cited and approved).

CIVIL ACTION, tried before *Clark, Judge,* at August Term, 1885, of the Superior Court of WAKE county.

The facts are as follows:

The plaintiff, the surviving wife of William Morris, with whom she had intermarried before the late civil war, on his death, in 1882, instituted the present action against the defendants, his administrator and heirs-at-law. In her complaint, she alleges that her intestate husband, in his life-time, used eight hundred dollars of her separate estate, in the purchase of, and payment for, a tract of land of about two hundred and fifty acres, situated in the county, and known as "Tipper's Cross Roads tract," and

wrongfully, in disregard of her rights, took the title to himself. She demands that the heirs-at-law be declared to hold as trustees to secure said amount, and that the land, or so much of it as may be necessary, be sold for its payment.

The answer, admitting the plaintiff's relation to the intestate; his ownership of the land; his death and intestacy; and the descent to the defendants, other than the administrator, his heirs-at-law, controverts the allegation on which the asserted equity of the plaintiff depends. It further sets up an estoppel, alleging that since the intestate's death, the plaintiff, by due course of law, in a proceeding against the said defendants, has caused her dower in said land, and in an acre lot belonging to the deceased at Oberlin, to be assigned to her, the judgment therefor remaining in force and unreversed.

Upon the coming in of the answer, the plaintiff obtained leave and amended her complaint, therein charging that the intestate received of her separate estate, and never accounted for the same, the sum of eight hundred dollars, and demanded judgment therefor against his administrator. To the complaint as amended, the defendants demurred, upon the ground of the improper joinder of two distinct and independent causes of action, with no common liability resting upon them. There was a severance ordered, and the administrator, Syme, put in an answer to the amendment which sets out a cause of action against him only, in his representative capacity, and says he has no knowledge, or information as to the facts therein alleged, sufficient to form a belief of their truth.

The case was then submitted to the jury, and upon the trial, the plaintiff's evidence was to the following effect:

The plaintiff's mother died in 1866, leaving real and personal estate, to which the plaintiff thereby became entitled. There was issue of her marriage with the intestate, born alive, but who had afterwards died. In 1874, the intestate received of his wife's distributive share in her mother's personal estate, the sum of forty dollars, derived from the sale of a cow and her increase,

from the plaintiff's brother, who paid the money. In the same year, the brother gave the plaintiff an ox, which her husband sold for twenty dollars. He also rented out the inherited land of his sister, for a period of ten successive years, from 1870 to 1880, and paid over the annual rent money to the deceased. In 1877, he was paid the further sum of one hundred and seventy-one dollars and ninety cents by the administrator of the plaintiff's mother, on account of her distributive share therein. The intestate, in 1880, received, also, forty-eight dollars, in money, derived from the sale of his wife's land. The "Tipper's Cross Roads tract," was bought in or about the year 1879.

The plaintiff introduced three witnesses whose testimony, as presenting the merits of the controversy, is set out in the record thus:

Asa N. Blake, a witness for plaintiff, said that he was present when an agreement was made, in 1880, between plaintiff and defendant's intestate, at which time it was agreed that plaintiff should sell the land she had inherited from her mother, and the proceeds should be invested in a lot in Oberlin village, near Raleigh, for plaintiff. Witness heard defendant's intestate say, that he bought the lot in Oberlin, and took the title in his own name, and that this was like all the land he had; that all he had was bought with his wife's money, and belonged to his wife; that he did not invest his own money in land, and that he was going to have it fixed so that she could hold it; that if he were to die it would go to his folks. Witness had heard him, in talking, while speaking of the Tipper's tract of land, call it his land, and immediately correct himself and say, "not my land, Sallie's land," referring to the plaintiff. He had come to Raleigh twice to have the matter fixed up, but could not see his lawyer.

Len. H. Royster, witness for plaintiff, said he had heard defendant's intestate say on a dozen different occasions, that he did not own a foot of land himself; that he bought the Tipper's Cross Roads tract with his wife's money, for her; that he did not invest his own money in land.

John McDade, a witness for plaintiff, said that he had heard defendant's intestate say, on many occasions, the last time only three days before his death, that he did not own a foot of land himself; that all the land he had, belonged to his wife, and was bought with her money. Witness had heard defendant's intestate call the Tipper's Cross Roads tract his land, and then correct himself immediately, and say "Sallie's land," referring to plaintiff. Witness had heard defendant's intestate say, three days before his death, that he was going to make his will and leave his property to his wife.

The defendant offered no evidence, and demurred to the plaintiff's evidence, and his Honor withdrew the case from the jury.

After argument, his Honor decided that the plaintiff was only entitled to judgment for the value of the ox, with interest, and for the value of the land, with interest thereon from the death of defendant's intestate.

The final judgment was entered in form as follows:

"This action coming on for trial, before the Court and a jury, and the plaintiff having introduced evidence, to which the defendant demurred—and there being no proof of any unreasonable delay on the part of the defendant in paying the amount recovered by the plaintiff in this action:

Hereupon, it is adjudged, that the plaintiff recover against the defendant the sum of sixty-eight dollars, with interest on $20.00 thereof from July 1st, 1874, and on $48.00 thereof from the 1st day of December, 1882, until paid, and that she recover no costs of defendant.

From this judgment the plaintiff appealed.

*Mr. J. H. Fleming*, for plaintiff.
*Mr. R. H. Battle*, for defendants.

SMITH, C. J. (after stating the case). We find no error in the rulings of the Court. The husband's right to receive and appropriate to his own use, his wife's distribute share in her mother's

estate, was vested, under the law then in force, of which no subsequent legislation could deprive him, without his consent. This marital right, does not, however, attach to personal property coming to the wife, after the Constitution of 1868 went into effect notwithstanding the marriage relation was entered into before. *Kirkman* v. *Bank of Greensboro,* 77 N. C., 394; *Citizens National Bank* v. *Green,* 78 N. C., 247; *Holliday* v. *McMillan,* 79 N. C., 315; *O'Connor* v. *Harris,* 81 N. C., 279.

In the case last cited, it is held, not only that the husband could collect and apply to his own use his wife's choses in action acquired before the change introduced in the Constitution, but one claiming as assignee under an assignment made by him in 1873, could exercise the same right for his own benefit.

It is equally true, that the deceased, by the birth of issue, became tenant by the curtesy initiate, to a separate estate for his own life, in his wife's land, the usufruct or profit of which, during that period, was absolutely and exclusively his own property. This has not been questioned in this State, since the decision in *Williams* v. *Lanier,* Busb., 30, and others following that case, *Halford* v. *Tetherow,* 2 Jones, 393; *Childers* v. *Bumgarner,* 8 Jones, 297; *McGlennery* v. *Miller,* 90 N. C., 215; *Osborne* v. *Mull,* 91 N. C., 203.

It is insisted by the counsel for the appellant, however, that the act of January 29th, 1849, (The Code, §1840,) which exempts from execution any interest of the husband in his wife's real estate, and disables him from selling or leasing the same, without her consent, when the marriage has taken place since the third Monday of November, 1848, has had the effect of destroying all estates by the curtesy, and rendering the wife's real estate separate property in her.

The contrary has been so often and uniformly held, and the estate by the curtesy recognized as subsisting in the husband, when the statute had become operative, that we will be content with a reference to some of the cases most in point. *Houston* v. *Brown,* 7 Jo., 161; *Long* v. *Græber,* 64 N. C., 431; *Jones* v.

*Carter*, 73 N. C., 148; *Wilon* v. *Arentz*, 70 N. C., 670; *Jones* v. *Cohen*, 82 N. C., 75; *State* v. *Mills*, 91 N. C., 581.

In the case last mentioned, ASHE, J., uses this forcible and clear language, in stating the true rule:

" If he was married, and the land acquired by his wife before the adoption of the constitution of 1868, and the act called the ' marriage act,' he was a tenant by the courtesy initiate, notwithstanding the act of 1848. *Houston* v. *Brown*, 7 Jo., 161; and if he was the tenant by the curtesy initiate, he was necessarily entitled to the possession, *Wilson* v. *Arentz*, 70 N. C., 670 ; and if entitled to the possession, he had a right to the permancy of the rents and profits," &c. It is then manifest, that the money received by the intestate from his wife's distributive share in her mother's personal estate, and from rents of her land, belonged to him, and whatever he may have intended or said in reference to these funds, they did not thereby become the plaintiff's, and his personal representative cannot be held responsible to her demand therefor. It is otherwise as to the ox given her, and sold by the intestate, and as to the sum received upon the sale of her land, to the interest of which latter sum only, was he entitled during life.

The intestate died in December, 1882, and letters of administration issued on his estate in 1883, at what time is not stated, but necessarily before July 19th, when the suit was commenced. Nor does it appear that the administrator ever contested his intestate's liability for the sums adjudged to be due plaintiff. The case is very like that of *May* v. *Darden*, 83 N. C., 237, and must follow the ruling there made.

There is no error, and the judgment must be affirmed.