PHAMIE A. TAYLOR v. THOMAS W. TAYLOR.

*Ejectment—Divorce a mensa et thoro—Tenant by the Curtesy Initiate—Effect of Act of 1848 (Section 1840 of The Code).*

1. Neither the Act of 1848 (section 1840 of *The Code*) nor the Constitution of 1868 abolished tenancy by the curtesy initiate, but since the said Act of 1848 such tenancy confers no rights which the husband can assert *against* the wife as respects her real estate acquired after that act took effect—the intention and effect of the act being to provide for the wife a home which she cannot be deprived of either by her husband or his creditors.

2. Where a wife has obtained a divorce *a mensa et thoro*, whatever rights the husband had in her lands are suspended until a reconciliation shall be effected, or until by her death he may become tenant by the curtesy consummate, and therefore she is entitled to recover from him the possession and use of her lands.

ACTION, brought by plaintiff, who had obtained a divorce *a mensa et thoro* against her husband, the defendant, to recover possession of her real estate and for an injunction restraining her husband from interference with her exclusive control and enjoyment of the same, tried before *Brown, J.*, at Fall Term, 1892, of NASH Superior Court.

From a judgment and decree in favor of plaintiff defendant appealed.

The facts are sufficiently stated in the opinion of the Court.

*Mr. E. C. Smith*, for plaintiff.

*Messrs. F. A. Woodard, G. W. Blount* and *B. F. Taylor*, for defendant (appellant).

SHEPHERD, C. J.: The plaintiff obtained a divorce *a mensa et thoro* on the ground that the defendant, her husband, was an habitual drunkard and had offered such indignities to her person as to render her condition intolerable and her life burdensome. *The Code*, §1286. The defendant has no income out of which alimony can be granted, and he denies the right of the plaintiff to recover and enjoy the possession of her own land except upon the condition that she return to his conjugal embraces.

It is insisted by the defendant that, as the marriage and acquisition of the land were before 1868, the law in force at that time is alone applicable in determining his rights, and that these rights, having vested, cannot be disturbed by subsequent legislation. Granting this to be true, let us inquire into the interest of the husband in the wife's lands under the common law, as modified by the Act of 1848, Rev. Code, ch. 56, section 1. At common law the husband, upon the marriage, was seized in right of his wife of a freehold interest in her lands during their joint

lives; but until the birth of issue both husband and wife must have done homage to the lord. After the birth of issue he was seized of an estate in his own right, called tenancy by the curtesy *initiate*, and did homage alone. Coke Lit., 67 A. This estate, if he survived his wife, was called tenancy by the curtesy *consummate*, and inured to his benefit for life. Either as tenant by marital right or as tenant by curtesy *initiate*, the husband was entitled to the rents and profits and might lease or convey his estate, and it might be sold under execution against him. It was in reference to decisions made under the common law, as thus stated, that some of the language, which we find rather indiscriminately quoted in several of our later cases, was used; and in reading the decisions of the Court it is, therefore, important to keep in mind the very radical changes effected by the Act of 1848. The act is entitled "An Act making better and more suitable provisions for *femes covert.*" and was construed in the case of *Houston* v. *Brown*, 7 Jones, 161.

The Court said (PEARSON, C. J.) that "its purpose was to adopt to a partial extent the principle of a homestead law and provide a *home* for the wife, leaving the rights of the husband unimpaired and unrestricted after her death. To this end the husband is not allowed to sell the land, or even to make a lease for years in her life-time without her consent, authenticated by deed and privy examination. Nor can his estate in the land be sold under execution. To this extent the power of the husband is restricted, but no further; and after her death there is no intimation of an intention to interfere with his rights according to the common law. * * * The sole object was to provide a home for her, of which she could not be deprived, either by the husband or by his creditors."

It has been intimated that the effect of the act was to destroy the tenancy by curtesy *initiate* (*Jones* v. *Carter*, 73 N. C., 148), and in *Cecil* v. *Smith*, 81 N. C., 285, the Court, after speaking of the Constitution of 1868 and the case of *Manning* v. *Manning*, 79 N. C., 293, refers to the act and seems to treat the estate of the wife, under both laws, as a "separate estate" and the interest of the husband during coverture as "a mere occupancy with the wife."

In *Jones* v. *Carter*, *supra*, the Court inclined to the opinion that by depriving the husband of the right to dispose of the land for his life the act necessarily operated so as to prevent his acquiring an estate for life as tenant by the curtesy initiate; but it has been finally decided that neither the said act nor the Constitution of 1868 destroyed such tenancy, although the husband was stripped almost entirely of his common law rights therein during the coverture. *Walker* v. *Long*, 109 N. C., 510.

In the case just cited the Court said: "By virtue of the Act of 1848 and the further modification made by the Constitution of 1868, the tenancy by the courtesy initiate is stripped of its common law attributes till there only remains the husband's bare right of occupancy with his wife, with the right of ingress and egress (*Manning* v. *Manning*, *supra*) and the right to the curtesy consummate contingent upon his surviving her. * * * The husband is still seized in law of the realty of his wife, shorn of the right to take the rents and of the power to lease her lands. * * * He has by the courtesy initiate a freehold interest, but not an estate in the property."

In *Jones* v. *Coffey*, 109 N. C., 515, a construction of the Act of 1848 was essential to the decision of the case, and the Court said that "whatever may be the rights of the husband in the wife's land after she may die intestate, the authorities concur in the view that the husband holds no

estate during the life of the wife as tenant by the curtesy initiate which is subject to execution, and which he can assert against the wife. He has the right of ingress and egress and marital occupancy, but can assume no dominion over her land except as her properly constituted agent."

It is urged that this view is in conflict with *Morris* v. *Morris*, 94 N. C., 613, and *Walker* v. *Long*, 109 N. C., 510, and the cases cited therein. These cases do but at the most decide that where the husband and wife are living together the former, after issue born, may sue alone for the possession of the wife's land (*Wilson* v. *Arentz*, 70 N. C., 670), or for the rents and profits thereof; and that the latter, in the absence of any claim on the part of the wife, is the owner of the same. *Morris* v. *Morris*, *supra*. No case has been decided under the Act of 1848 to the effect that the husband, after compelling his wife by his misconduct to obtain a divorce *a mensa et thoro*, and being unable to pay alimony, has a right to the possession of the wife's land during the existence of the coverture; and it is to be observed that in the cases cited in the decisions referred to, as authority for the principle of the absolute ownership of the husband, the rights were acquired before the Act of 1848. See *Williams* v. *Lanier*, Busbee 30; *Halford* v. *Tetherow*, 2 Jones, 393; *Childers* v. *Bumgarner*, 8 Jones, 297. The other cases relate to the competency of the husband to serve as a juror (*State* v. *Mills*, 91 N. C., 581), the rights of the husband after discoverture, his right to convey his interest during coverture (*McGlennery* v. *Miller*, 90 N. C., 215), and other questions not directly affecting the present controversy. In all of these cases the actual *decision* (as distinguished from several expresssions founded upon the common law) may, it is thought, be reconciled with the recent ruling of this Court in *Jones* v. *Coffey*, *supra*, that under the act the husband has no right which he can assert

*against* the wife in her real property. This appears to be in accord with the early declaration of the Court that "the sole object of the act was to provide for her a *home,* of which she could not be deprived either by the husband or by his creditors." *Houston* v. *Brown, supra.* Indeed it would seem but reasonable that, if he is without power to lease the land even for a single day without her consent, he should not be permitted to deprive her of its possession by such violence or other misconduct as may render it impossible in the eye of the law for her to live with him in safety or comfort.

Conceding that the cases may not be altogether harmonious, we must adopt the later decisions, and according to these the plaintiff is entitled to recover; for admitting that a divorce *a mensa et thoro* cannot, as it is claimed, affect the property rights of the parties (*Taylor* v. *Taylor,* 93 N. C., 418), the defendant as against the wife had no property rights whatever, but simply a right of ingress and egress for the purpose of enjoying her society, and these he has forfeited during the coverture, or until a reconciliation, by his own misconduct.

Taking the other view, however, and admitting that the husband had a right to the rents and possession of the land during coverture, we think that such rights must yield when they come in conflict with the paramount rights of the wife, as indicated by the Act of 1848. As to the ownership of her personal property, the right to reduce her choses in action to possession and his right to curtesy after her death, all of these remain as at common law; but we are of the opinion that whatever interest he may have had in the lands were, under a proper construction of the act, suspended as soon as by his misconduct he became unfit to associate with his wife. It was her land, and the object of the statute was to preserve it as " her home." At the time of

his marriage he knew that if he offered her such indignities as to render her condition intolerable and her life burdensome (Rev. Code, ch. 39, sec. 3) she would be entitled to a divorce *a mensa et thoro*, and he must be deemed to have contracted with reference to the law in this respect. He has forfeited his right to live with her, and it would be a strange construction of a statute designed for the preservation of her home that the misconduct of her husband can have the effect of turning her out of doors without alimony, and conferring upon him the exclusive possession of her land, unless she returns and submits to the same treatment, which a Court has declared to be such as to entitle her to live separate and apart from him. Neither the case of *Taylor* v. *Taylor, supra,* nor any other that we can find in our Reports, has passed upon this question, and we are very sure that the view we have taken is in harmony with the spirit and reason of the act as well as the principles of humanity. We see no force in the argument founded upon section 13, ch. 39, of the Revised Code. According to this provision the wife, who is divorced from bed and board, is enabled to acquire, retain and dispose of all property she may thereafter acquire, whether real or personal, but it cannot have the effect of depriving her of land which she has previously acquired and which is protected by the statute.

So, taking either view of the law which we have presented, we are of the opinion that the plaintiff is entitled to the possession of the land exclusive of the husband until a reconciliation has been effected.

Affirmed.