HALLYBURTON v. SLAGLE.

(Filed June 11, 1903.)

1. CURTESY—*Husband and Wife—Wills—Constitution 1868—Married Women.*

Since the Constitution of 1868 a married woman may by will deprive her husband of curtesy in her separate estate.

2. DEEDS—*Estoppel—Fraud—Bankruptcy.*

Where a person to defraud his creditors conveys land and afterwards becomes a voluntary bankrupt and the trustee in bankruptcy in behalf of the creditors sells the land and the bankrupt through another becomes the purchaser, whatever title he gets by the deed of the trustee accrues to the benefit of the original grantee.

PETITION to rehear this case, reported in 130 N. C., 482. Petition dismissed.

*Merrimon & Merrimon,* and *Shepherd & Shepherd,* for the petitioner.

*Chas. A. Moore, Zeb Weaver* and *Locke Craig,* in opposition.

WALKER, J.  This is a petition to rehear the above entitled case, which was decided at the February Term, 1902, and is reported in 130 N. C., 482.

The assignment of error in regard to the defendant's claim for an estate by the curtesy in tract No. 2, known as the Chunn land, cannot be sustained. As the parties were married before 1868 and the land was acquired in 1877, the

defendant was entitled to an estate by the curtesy, at the death of his wife, provided she had died intestate or had not disposed of the property by her will to some one else. *Tiddy v. Graves,* 126 N. C., 620. It appears in this case that Mrs. Slagle died leaving a will in which she devised the said property to the plaintiff. When a marriage has taken place prior to the dower act of 1867, and the husband has acquired land after its passage, the wife is entitled to dower, because, as soon as the land is acquired, the right of dower attaches to it. *O'Kelly v. Williams,* 84 N. C., 281. So when the marriage has taken place before the date of the ratification of the Constitution of 1868 and the wife has acquired property after that date, the provisions of the Constitution in regard to the separate estate of the wife and her power to devise her property immediately become operative and affect all of the rights in the property thus acquired, and the husband's estate by the curtesy, unlike that which existed prior to August, 1868, only becomes consummate upon the death of the wife intestate. *Holliday v. McMillan,* 79 N. C., 315; *Morris v. Morris,* 94 N. C., 613; *Kirkman v. Banks,* 77 N. C., 394. By the marriage before August, 1868, the husband acquired no such vested right in the future acquisitions of the wife as to prevent the application of the provisions of the Constitution and statutes to his right of curtesy. A mere expectancy or possibility of future acquisitions is not a vested right. *Holliday v. McMillan, supra.* Property is always acquired subject to the laws existing and in force at the time. *O'Kelly v. Williams, supra.*

The principal question in the case, and, indeed, the only one discussed before us, relates to the estoppel which plaintiff alleges arose out of a deed to Mr. Woodfin and was fed by the title acquired by the defendant under the deed of Reynolds, assignee in bankruptcy, to him, whereby the plaintiff's

title to the land was made good and perfect as against the defendant.

The defendant for a nominal consideration and with intent to defraud his creditors made a deed for the land to Mr. Woodfin in trust for the use and benefit of his wife for life and, after her death, for the use and benefit of her children, and, in May, 1868, upon his own petition, he was adjudged a bankrupt. His assignee sold the land and it was bought by one Lang for the defendant, and the assignee afterwards conveyed it to the latter with the consent of Lang.

Defendant's counsel contend that there was no estoppel arising out of the deed, because (1) Plaintiffs cannot maintain an action upon the warranty in the deed to Woodfin, and (2) Because by the acts of the assignee the land has been devoted to the satisfaction of the claims of creditors to whom it rightfully belonged, the covenant being "void and of no effect" as to them.

While the deed of Slagle to Woodfin was void as to creditors and as to their representative, the assignee in bankruptcy, if either of them should seek to set it aside, it was yet good and valid as between the parties to it and the title to the land passed to Woodfin, as trustee, subject to be divested by any creditors who might seek to subject it to the payment of their claims.

The defect in the title to the land was caused by the defendant's own wrongful act in making the deed with a fraudulent intent, and it would be strange indeed if the law should permit him afterwards to acquire a title through the creditors or their representative, the assignee in bankruptcy, and hold it in hostility to the one he conveyed and warranted. We do not think that the law will permit him to do so. It is not denied that, when a good and indefeasible title is transferred by deed, the vendor may afterwards acquire an independent title, such for example as a title by adverse posses-

sion under color, and hold it against his vendee, but the title so acquired must be consistent with the provisions of his own deed and his covenants therein contained. *Cuthrell v. Hawkins*, 98 N. C., 203; *Johnson v. Farlow*, 35 N. C., 84; *Eddleman v. Carpenter*, 52 N. C., 616. But when by his deed the grantor conveys without any of the usual covenants of title, or when by the form or nature of the conveyance, he affirms, either expressly or impliedly, that he has a good and perfect title to the land, though, in fact, he has a defective or imperfect title, and he subsequently acquires a good title thereto, such after-acquired title will inure to the benefit of his grantee by estoppel. *Van Renselaer v. Carney*, 11 Howard, 297; *Ryan v. U. S.*, 136 U. S., 68; 11 Am. & Eng. Enc. (2d Ed.), p. 403; *Hagensick v. Castor*, 53 Neb., 495; *French v. Spencer*, 21 Howard, 240.

In *Van Renselaer v. Carney*, it is said: "If the deed bears on its face evidence that the grantors intended to convey, and the grantee expected to become invested with an estate of a particular description or quality, and that the bargain had proceeded on that footing between the parties, then, although it may not contain any covenants of title in the technical sense of the term, still the legal operation and effect of the instrument will be binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted; at least, so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance."

The proposition may be stated another way: "Where one assumes by his deed to convey a title and by any form of assurance obligates himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a conflicting title and turn his grantor over to a suit upon his covenants

for redress. The short and effectual method of redress is to deny him the liberty of settling up his after-acquired title as against his previous conveyance. This is merely refusing him the countenance and assistance of the law in breaking the assurance which his covenants have given." *Smith v. Williams,* 44 Mich., 240. The general rule is that, when the deed contains no covenant of warranty or other covenant sufficient to estop him, the grantor can set up an after-acquired title, unless he has either expressly or impliedly affirmed in the deed that he has a good title, in which case he will be estopped to set up the after-acquired title. This rule accords with common honesty and fair dealing. The covenant of warranty works an estoppel not only to prevent the circuity of action, which is sometimes given as the reason for it, but for other good and valid reasons. The grantor should not be permitted to impeach and nullify his solemn deed and act by alleging his own fraud and iniquity, as by claiming and setting up a title against his grantee which could not have existed but for his own fraudulent act and intent. It would be contrary to equity and good morals to allow him to take any advantage from the newly acquired title in such a way. *Reynolds v. Cook,* 83 Va., 817; 5 Am. St. Rep., 317. The principle would seem to be so clear and just as not to require a further discussion or citation of authority.

In this case it is apparent, we think, upon the face of the deed that the defendant intended to affirm impliedly, at least, that he had a good title to the land. It was his purpose to convey the fee which should be held by Woodfin for the use, benefit and enjoyment of his wife and children, and this could not well be done, unless the title was not only good at the time he transferred it, but remained good, so far as any act of the grantor could affect it. He agrees to warrant and defend the title of the lot to the trustee and his heirs forever for the uses and purposes set forth in the deed. The

word "warrant" is defined as an assurance of title to property sold and a stipulation by an express covenant that the title of the grantor shall be good and his possession undisturbed. Black's Law Dict., p. 1233. Indeed, it has been said to have been fully established as a principle, by the best authority, that the doctrine of estoppel applies to conveyances without warranty where it appears, by the deed, that the parties intended to deal with and convey a title in fee-simple. *Graham v. Meek,* 1 Ore., 325; 1 Greenleaf on Ev., Sec. 24. And, if this is not true, the estoppel certainly arises when the conveyance of the land is coupled with a covenant of warranty. Mr. Greenleaf says: "A covenant of warranty estops the grantor from setting up an after-acquired title against the grantee, for it is a perpetually operating covenant."

It was contended though by defendant's counsel in his able and ingenious argument that there could be no rebutter or estoppel unless there could be a recovery upon the warranty, or unless the deed failed to pass an estate to the grantee. It is said, in *Bush v. Cooper,* 18 Howard 82, that "there is no necessary connection between the personal liability of the debtor on his covenant and the estoppel which arises therefrom," and the Court was then speaking with reference to the discharge of the covenantor in bankruptcy. "Such estoppels," says the Court, "do not depend upon personal liability for damages. This is apparent, when we remember that estoppels bind, not only parties, but privies in blood and estate, though not personally liable on the covenants creating the estoppel." The defendant undertook to sell and convey to Woodfin, as trustee, not a bad or defective title, but a good and perfect title, and the estoppel operates at law to pass the legal estate, and in equity to conclude him from asserting the existence of a title inconsistent with what he undertook to sell and convey. *Bush v. Cooper, supra.* In

the case of *Dunbar v. McFall,* 9 Humph., 505, the facts were very much like those in the case at bar. "It is supposed," says the Court, "that as these negroes had been taken in execution as the property of Lemmy Williams, after the period of this fraudulent sale, and had been sold, and were afterwards held by persons, against whom the bill of sale of Lemmy Williams to William K. Williams, would have been void— that when they were repurchased by Lemmy Williams, he took them and held them, in right of the creditor, and that his title against the fraudulent sale was as good as that of the creditor. This position is untenable for several reasons, first, because, however Lemmy Williams may have obtained the negroes, after the execution sale, still this defence is an allegation of his own turpitude in the sale to W. K. Williams, which he is not permitted to make, to avoid his own deed— for, as between himself and William K. Williams, the fraudulent sale was good. 2. But in the bill of sale to William K. Williams, there is a warranty of title. Now, as this bill of sale was good between the parties, the moment the vendor re-purchased the negroes and obtained them again, free from liability on account of the fraud, such title inured to the benefit of the fraudulent vendee, and vested in him a good title. Lemmy Williams is estopped, therefore, by his covenant to resist the title of his vendee." See also *Nance v. Thomas,* 1 Sneed, 327.

If the title conveyed by the defendant's deed to Woodfin was defective on account of any fraud or wrong committed by him which invalidated the deed, it was his duty to remove the defect, and whatever was afterwards done by him, which perfected the title, will be considered as done in discharge of this plain duty and obligation. *Frank v. Caruthers,* 108 Mo., 573; *Johnson v. Foster,* Tex. Court App., 34 S. W., 821; *Hannah v. Collins,* 94 Ind., 201. In the case first cited the Court says: "The law would be justly 'chargeable with

connivance at fraud and dishonesty' to permit the grantor to take advantage of his own delinquency for the purpose of wresting from his grantees the property already conveyed to them."

In the case of *Gibbs v. Thayer,* 6 Cushing, 30, it appeared that a husband, having an estate for his own life in land of his wife, conveyed his interest therein, in trust for her benefit, by a deed fraudulent and void as against creditors, and which contained a warranty against all claims of the grantor or his heirs or of any other person claiming under him or them; and having subsequently taken advantage of the insolvent law, and himself become the purchaser and received a conveyance of the assignees interest in the land, it was held that he was estopped by his covenant to set up against his grantee the title so acquired. "If at the time of such conveyance and warranty, the estate conveyed was liable to be taken by the grantor's creditors to satisfy his debts, this liability was an incumbrance, by reason of a subsisting right of creditors to take and hold the estate under him, and was at that time therefore a paramount subsisting claim, within the qualified warranty, and the taking of the estate by the creditors would be a breach of that warranty." In that case the Court draws the distinction between a title acquired by the grantor under a sale made in behalf of creditors against whom the fraudulent deed is void and an independent title acquired by the grantor. Mr. Bigelow cites this case with approval and says: "It was immaterial whether or not the original conveyance was fraudulent against creditors. If it was not, then the property did not pass to the assignee, and the plaintiff took no title under it; if it was fraudulent, it was by reason of acts done by him, which had given rights to creditors to reclaim the land and hold it, and was an encumbrance against which he had warranted. In this case the purchase of the interest was only an extinguishment of the

encumbrance; and by the doctrine of estoppel this purchase of the outstanding right of creditors inured to the benefit of the plaintiff's grantee." Bigelow on Estoppel, (5 Ed.), p. 407.

The same doctrine is recognized in *Bank v. Glenn,* 68 N. C., 36, where it is said that, when the title proposed to be conveyed is defective and the grantor afterwards perfects the title by buying in the adverse claim and removing the cloud or defect from the title he undertook to convey, the subsequent acquired title will inure to his grantee by estoppel. And so in *Taylor v. Shuford,* 11 N. C., 131; 15 Am. Dec., 512, the Court, after stating that the estoppel effects the estate conveyed by the deed, proceeds as follows: "The breach is not that no estate passed, but that an estate did pass, but that the title to that estate was not good, and that he was disturbed in the enjoyment of that estate by one having title. In fact, the very idea of annexing a warranty or covenant presupposes an estate to pass; for without the estate passes there can be no warranty, which is a dependent covenant, as is a covenant for quiet enjoyment, although by the phraseology there may be an independent covenant, but it is not attached in law to the estate. This very clearly proves what is affirmed, and what estoppels arise out of a bargain and sale." In *Cuthrell v. Hawkins,* 98 N. C., 205, this Court, citing *Moore v. Willis,* 9 N. C., 559, says: "If A sell to B by indenture he thereby affirms that he has title when he makes his deed, and if he did not and afterwards acquire one, in an action by him against B the title of the latter prevails, not because A passes to him any title, because he had not any then to pass, but because he is precluded from showing the fact." We have shown that it makes no difference in the application of the rule whether the vendor had no title at the time of his conveyance, or only a defective title. The principle of law,

therefore, which governs the two cases must be the same, as the reason is the same.

We do not think the case of *Moore v. Willis,* 9 N. C., 559, which was cited to us by the defendant's counsel, sustains his position. In that case, the property fraudulently conveyed had been transferred by the vendor and delivered to his creditors to pay their debts, and the Court simply held that the latter could retain the property as against the fraudulent vendee, because the original transfer was void as to them, and they had received only what the law gives them. The controversy was not between the vendee and the fraudulent vendor, as in our case, and no estoppel, therefore, could arise.

There is no force in the objection that the estoppel must be pleaded in order to avail the plaintiff. The same point was made in *Bank v. Glenn, supra,* and this Court held, that the estoppel being part of the title may be given in evidence without being pleaded. Besides, this objection comes too late.

While the other assignments of error were not pressed in the argument before us, we have carefully examined them and think that they are without any merit.

The former decision of the Court is correct and cannot, therefore, be disturbed.

Petition Dismissed.