Gaston, J.
 

 We are of opinion that none of the exceptions, urged by either of the parties to the judgment below, can be sustained, and that the law has been fairly expounded and correctly administered upon the trial.
 

 The instrument upon which the issue was made up could not be found a will oflands, because the supposed testatrix was a married woman, and therefore in law incapable of devising lands. By the common law of England, after the conquest lands could not be devised, but the statute of Wills 32, H. 8, ch. 1, explained, because of abundant caution, by Stat. 34, H. 8, ch. 5, enacted that all persons seized in fee simple (except
 
 femes
 
 coverts, infants, idiots, and persons of non-sane memory) might devise to any other person, except bodies corporate, two thirds of their land held in chivalry, and the whole of those holden in socage. This was the law brought over to this country by our ancestors, and, as all tenures here before the revolution were by free and common
 
 *520
 
 socage, this power of devising applied to all lands within the colony- Ma«y ^aws have since the revolution been enacted by our Legislature on the subject of devises, but none either extending or abridging the
 
 power
 
 of tenant in fee simple, such as it existed at the revolution.
 
 A
 
 married woman, neither in the country of our ancestors nor with us, ever had capacity to devise. It is true that she might by means of a power, properly created, appoint a disposition of her real estate after death, which power must be executed, like the will of a ferae sole, and is subject very much to the same rules ot construction. But the act, if good, is valid as an
 
 appointment
 
 under a power, and it is not a devise; for to hold it such would be to give to a married woman a capacity which she did not possess at common law and which no statute has conferred upon her. The question here submiteed, so far as the lands of the testatrix were concerned, was not whether a valid appointment had been made, for
 
 that
 
 question could not thus be tried; but whether the paper writing produced was a good will. No finding of the jury in this case, nor adjudication thereon, can prevent the propounder of this will from setting up the disposition of the lands, contained in it, as an appointment in equity, should he think proper to bringit forward as such, before the proper tribunal, against the proper parties. When thus preferred, its validity as an appointment may be tried as such court shall direct, but not until then. Yery different, however, is the law on the subject of the disposition of personal estate to- take effect after death, by what is properly called a
 
 testament.
 
 Whatever fluctuations in the law might have existed upon the subject of testaments at an early period, a general power to dispose of chattels by testament existed long before the statute of wills, in every part oí England, except in the province of York, the principality of Wales, and the city of London, where by custom, if the testator had wife or children, the power was restricted to a part only of the testator’s goods. The validity of a testament was by the law a question exclusively for the determination of the ecclesiastical tribunals, and these tribunals, in passing upon that question, were governed principally by rales drawn from the civil law. They
 
 *521
 
 held that a married woman, by her husband’s license, might make a testament, and where he had covenanted on. marriage to allow her that license, but withheld it from the particular will in question, it was still her testameat, sufficient at least to repel him from the right of administering on her effects, as he was entitled to do in case of intestacy, and to authorise the granting of administration to her appointee
 
 cum testamento annexe.
 
 So exclusive is the jurisdiction of these courts over the subject matter of testaments, that when a power is secured to a married woman oí making an appointment of personal estate by will, no court can give effect to an appointment under that power, until the writing purporting to contain the appointment has been first
 
 proved
 
 in the proper Ecclesiastical Court
 
 as a will.
 
 And when it has received this probate, and unless this probate be called in, all other Courts are bound to regard the writing so proved as a will.
 
 (Ross
 
 v.
 
 Ewer,
 
 3 Atk. 160.
 
 Cothay v. Sydenham, 2
 
 Bro. 302.
 
 Rich v. Cockell,
 
 9 Ves. 369.
 
 Stevens
 
 v.
 
 Bagwell
 
 15 Ves. 139.
 
 Douglas
 
 v.
 
 Cooper,
 
 3.
 
 Mylne
 
 v.
 
 Keene,
 
 378, 9th Con. Ch. Rep. 85.) Such is the law which.- obtained here upon the first colonization of of this country. Instead of the Ecclesiastical Courts, other courts were invested with jurisdiction over testaments, but the change
 
 oí jurisdiction
 
 left the
 
 law
 
 of testaments unaltered. Who can make a testament — what is a testament- — , the necessity and effeet of probate of a testament — are all questions to be decided by that law, having regard
 
 to
 
 the modifications thereof, which may have been made by legislative enactments. We know oí none such effecting the .question now under consideration.
 
 See Harvey
 
 v.
 
 Smith,
 
 1
 
 Dev. & Bat. Rep,
 
 186.
 

 It has been urged as an objection to his Honor’s instructions, that therein he omitted to inform the jury, that, because of the facility with which a fraud might be practised upon a testator, under circumstances like to those shewn in the case before them, and because of the danger of such frauds being practised with impunity, unless a jury should infer fraud from the concurrence of many suspicious circumstances, and
 
 *522
 
 a defect of evidence to repel the inference, they ought not' to require absolute proof of fraud. But to this objection it is a conclusive answer, that no such special instruction appears t0 have been prayed upon the trial, and the want of it is first brought *to notice upon the motion for a new trial, when it was urged as a reason in favor of such motion. But, moreover, it is not improper to add, that
 
 this,
 
 which is insisted on as a fit matter for a special instruction, is an argument proper to be addressed to the discretion of the jury as rational men, and not a principle of law to be given to them in charge..—
 
 Downey
 
 v. Murphey, 1
 
 Dev. & Bat.
 
 82. It is
 
 to
 
 be presumed, that as an argument it was urged to the jury; and if so, it y/as
 
 not the
 
 duty of the Judge to repeat it. But if the fact be that the Counsel failed to urge it,
 
 the
 
 province of the Judge was not to supply arguments for either party. His duty is fulfilled if he
 
 “
 
 state in a full and correct manner the facts given in evidence, and declare and explain the law arising thereon.” Revised Stat. Ch. 31, Sec. 136. Nothing appears on the Record to warrant a belief or doubt even that this was not done.
 

 The judgment must be affirmed. As both parties appealed from the judgment of the Superior Court, and that judgment is affirmed
 
 in toto,
 
 we do not adjudge costs in, this Court to either. If the Clerk’s costs have not actually been paid, he may collect them by execution under the provisions of the 24th Section of the 105th Chapter of the Revised Statutes.
 

 Pee Curiam, Judgment accordingly.