## WATTS v. GRIFFIN.

(Filed March 21, 1905).

*Wills—Conditions in Restraint of Marriage (Total, Partial, Uncertain)—Curtesy, how Affected by Wife's Will.*

1. A mother devised by the first item of her will, a house and lot to four of her children "as a common home for themselves and with equal rights to the same until 21 years after the death" of herself and husband, and that then they and their heirs shall own the said house and lot in fee-simple, and in a subsequent item, she provided that if either of three of said children "marry a common woman," in such event he shall not have any interest in said house and lot: *Held*, that a deed executed by all of the devisees during the life-time of husband of the testatrix, conveyed a perfect title.

2. A condition annexed to a gift entirely restraining the donee from marriage, is against public policy and void, and even if there be no positive prohibition, yet if the condition operates to occasion a probable prohibition, or is so rigid as to cause a virtual restraint, it is void.

3. But where the conditions in restraint are only partial and confined within reasonable limits and are certain in their terms, the law does not pronounce them void, if they do not unduly interfere with the donee's right of choosing whom and when he will marry.

4. A condition that if the devisee "shall marry a common woman" he shall not have any interest in a house and lot given to him in a previous item of the will, is void for uncertainty, and being a condition subsequent, the gift is absolute.

5. A husband has no interest whatever in the land of his wife acquired since 1868, where she dies testate as to such property.

CONTROVERSY without action by R. A. Watts, Sr., Andrew J. Flanner, Frank Watts, Eugene Watts, Florene Watts and Samuel Watts against W. H. Griffin, heard by *Judge Walter H. Neal* at the January Term, 1905, of the Superior Court of WAYNE County.

This is a controversy submitted without action under section 567 of The Code, upon the following statement of facts: The plaintiffs have contracted to convey the land described in the will hereinafter mentioned to the defendant for $5,000, and have duly executed and tendered to him a deed for the same with full covenants of title, and demanded the payment of the purchase-money. He refused to pay upon the ground that, by reason of the special provisions of the will of Fannie Watts and of a mortgage deed and assignment made by her husband, R. A. Watts, Sr., the plaintiffs who claim under said Fannie Watts cannot convey a good and indefeasible and unincumbered title. The items of the will which it is necessary to set out are as follows: "First. I give and devise to my beloved children, Frank Watts, Eugene Watts, Florene Watts and Samuel Watts, the house and lot whereon I now live, to own in the following manner: that they shall own the said house and lot as a common home for themselves and with equal rights to and in the same until 21 years after the death of both their parents, then the said Frank Watts, Eugene Watts, Florene Watts and Samuel Watts and their heirs shall own the said house and lot in fee-simple. The room in the aforesaid house, known as the Andrew J. Flanner room, I reserve for the use of my son Andrew J. Flanner until 21 years after the death of both my husband and myself. During such time, my son Andrew shall have the personal use only of the said room. My will is that in the event that the house on said lot should be destroyed by fire, the insurance on the same shall be used to build another house on said lot. Tenth. Should my sons, Frank, Eugene and Samuel, at any time marry common women, or if either of them marry a common woman, then in such event they shall not have interest in the house and lot devised in paragraph first of this will."

The testatrix provides in the will for the payment of the premiums for insurance on the house and the taxes.

The plaintiffs, except R. A. Watts, Sr., the husband of the testatrix, are the persons named in the first and tenth items of the will. The testatrix had two other children and heirs, R. A. Watts, Jr., and Mrs. Mamie Hedrick, who are now living. The plaintiffs are all of full age and otherwise have full capacity to convey the land.

At the hearing the Court below held that the plaintiffs had the right to convey the land in fee and that the same is free from all incumbrances and adjudged accordingly that the plaintiffs recover $5,000 purchase-money, and on payment of the same by the defendant that they deliver the deed to him. Defendant excepted and appealed.

*W. C. Munroe* and *E. A. Humphreys,* for the plaintiffs.
*Aycock & Daniels,* for the defendant.

WALKER, J., after stating the case. When this will was before the Court for construction at a former term (*Ex-parte Watts,* 130 N. C., 237), the question involved in the litigation was quite different from that which is now presented for solution. Proceedings had been brought to sell the land or home place described in the will for partition among the four devisees, two of whom were at the time under age. It was held and correctly, we now think, that the Court could not order a sale, as that would defeat the intention of the testatrix to provide a common home for her four children during a period limited to 21 years after the death of herself and her husband, which intention should be enforced, it not being contrary to public policy nor for any other reason unlawful. The condition certainly was not unlawful as to the infants, for it imposed no greater restraint upon

the alienation of the fee by them than did the law, as they could not convey during their minority. But the Court went further and held that the time, during which the house and lot should be owned and used as a common home, was not unreasonably long, and the condition was not therefore forbidden, and this was held to be the law without regard to the ages of the devisees. Counsel for the defendant now contend that, if the condition that the house and lot should be used as a common home for the time specified in the will is valid, and the land could not be sold in the proceeding for partition, as decided in *Ex-parte Watts, supra,* it follows that the plaintiffs cannot sell it and convey a good title by deed, for there is nothing in this case to take it out of the rule laid down in *Ex-parte Watts.*

This contention is based, we think, upon a misapprehension of the true scope of that decision. The Court expressly stated that it did not undertake to decide the question now presented in this case. *Justice Douglas,* who wrote the opinion, says: "We do not mean to say that the children or any of them are required to live in the house. Nor are we passing upon the effect of a joint deed executed by all the children after they become *sui juris.* Such a question is not before us in any shape." The reason for that decision was that there was not and could not be any such consent by the infants as would vest a good and indefeasible title in the purchaser at the sale. But we are dealing with a very different question, for it appears that all the interested parties, who now have full capacity to consent, have actually agreed to sell and convey the land to the defendant. If we should find that the testatrix intended to put a restraint upon the alienation of the land and has in fact done so, we might be forced to declare the condition to be void, but we should seek for some other intent more consistent with law, and if we can find one that will accord just as well with the

words of the testatrix as the other, and not trench upon any principle of law or public policy, we should adopt that one as the true intent. We think it is clear that the testatrix gave the house and lot to her children for the purpose of advancing their interests in life by providing them and each of them with a home in the event that one was needed, and she also intended in furtherance of this design that the land should not be conveyed or disposed of without the consent of all the devisees. Each one was at all times to have access to the house and lot for the purpose of using them as a home and could not be deprived of this right, either directly or indirectly, nor be affected by the act of any of the others which would be calculated to interfere with or impair the full enjoyment of the right. In a few words, she did not intend that any of her children should become homeless. We need not inquire whether the condition was void, in so far as it incidentally imposed a restraint upon the right of alienation of each one of the children, so that no one of them could convey his or her interest without the consent of the others during the prescribed period of time, because we have no such case presented. It is quite sufficient for us to declare, as we do, that it was not intended by the testatrix, if all of her children should think it best for them to part with the homestead so that each could buy a separate home for himself or herself, they should be prohibited from doing so. Such a construction might produce dissension and strife in the family, something that we can well see she neither contemplated nor desired. Giving to each one a veto power, it was left to all of them, if they could come to an agreement, to do with the property just as they pleased and as they might think would promote their interests, their happiness and welfare evidently being the paramount intent of the donor.

The effect of the devise was to give the children a fee

subject to the condition expressed in the gift. If it was intended that the gift of the land until 21 years after the death of the surviving parent should create a separate and distinct estate to be carved out of the fee, or what we may call a particular estate, with a remainder to the donees in fee at the expiration of that time, the two estates having met in the same persons and in the same right would unite under the doctrine of merger and become one estate in fee.

*Crudup v. Holding,* 118 N. C., 222, which was cited by the defendant's counsel, is clearly distinguishable from our case. It was there decided that the mother held the land in trust for her own use and the use of her children, who were infants, and could not sell it in violation of the terms of the will. There was no consent by all of the interested parties to sell, as in this case.

The defendant contends that the plaintiffs cannot convey a good title because of the condition annexed to the interests of the three sons in item ten of the will. As a general rule the law will not recognize and enforce conditions in restraint of marriage. They are regarded as against public policy and therefore invalid. But where they are only partial and confined within reasonable limits, the law does not pronounce them void if they do not unduly interfere with the beneficiary's right of choosing whom and when he will marry. The rule is thus stated in Pritchard on Wills, secs. 156 and 157: "A condition annexed to a gift entirely restraining the donee from marriage is unreasonable, against public policy and void, and the donee will take the gift free and discharged from the condition. And even if there be no positive prohibition, yet if the condition annexed to the gift is such as operates to occasion a probable prohibition, or is of so rigid a character, or so tied up to particular circumstances, as to unreasonably impede the donee in the

choice of marriage and therefore occasion a virtual restraint, it is void. But restraints designed for the protection of youth and inexperience against rash and improvident marriage, by postponing it until such time, as is or limiting it to such circumstances as are presumably to the advantage of the person affected, are valid." But all such conditions, besides being reasonable, must be certain in their terms, so that, for example, when a beneficiary is forbidden to marry any member of a certain class, the Court can determine who was intended to 'be embraced by the condition. "Perhaps no general rule can safely be laid down; but, independently of the question whether a condition involves anything illegal or impolitic, in order that it may be effectual the meaning of the testator must be reasonably clear and precise." Theobald on Wills, 452.

In this case we are not provided with any rule or definite criterion by which it can safely be decided to what particular persons the testator referred. The word "common" means, not excellent or distinguished in tone or quality; ordinary; common-place; plebian, hackneyed, coarse, low, unclean or given to habits of lewdness. These are some of its accepted definitions, and we can easily see from them that its meaning has a very wide range and is capable of almost indefinite expansion. It certainly embraces a very large class of people of different types and characteristics, and, apart from any objection that perhaps may properly be urged against the condition as being too comprehensive by reason of the broad signification of the word which was used to describe the persons intended, it has not the element of certainty which the law requires, as it refers to different classes of individuals without in any way indicating which one of those classes was meant. The condition is void for uncertainty, and being a condition subsequent the gift is absolute. Theobald, *supra,* 450. It operates merely to divest and not to prevent

the vesting of the interest so given, and is not therefore a condition precedent. 2 Jarman on Wills (5 Am. Ed.), 516; *Lloyd v. Branton,* 3 Mer., 108.

The question raised as to the mortgage and assignment of R. A. Watts, Sr., was decided in the case of *Ex-parte Watts,* and we see nothing in this case to vary its facts from those upon which that decision was based, nor do we think we should change the opinion there expressed that he had no interest in the property. *Tiddy v. Graves,* 126 N. C., 620; *Hallyburton v. Slagle,* 132 N. C., 947.

Our conclusion is, the Court was right in adjudging that the plaintiffs can convey by their deed a good and perfect title to the premises.

No Error.