A. A. SIDES ET AL. v. C. E. SIDES ET AL.

(Filed 26 November, 1919.)

**Wills—Devise—Residence at Home Place—Waiver—Estates—Determinable Estates—Alternative Rights.**

A testator, among other things, devised the place upon which he had resided to his children as long as they remain single as a "common home for them all, but if any of them shall marry, then they, the married ones, shall look out for some other place"; and, later in the will, "that the home place shall remain a home for all the single members of the family as long as they shall live, if they choose to do so, and then to be divided between the next of kin." The single members of the family signified that they did not choose to reside at the home place by a petition to the court to that effect, and asked that the property be divided according to the terms of the will. *Held,* the words "if they choose to do so" referred to the residence of the single children at the "home place," which they could waive or abandon by asking the court to divide the same according to the provision of the will, all the children, in that event, being tenants in common, with the right of partition. *Semble,* such children, if holding a determinable life estate, could choose this course as an alternative right under the will.

SPECIAL PROCEEDING for the partition of lands by a sale thereof, heard on appeal from the clerk of the court, by *Adams, J.,* at October Term, 1919, of IREDELL.

The matter was heard in the court below upon an agreed case, and the following statement of facts will sufficiently explain the controversy:

In 1881 Daniel Sides died, leaving a last will and testament. He left surviving him nine children and two children of a deceased son. One of the surviving children of Daniel Sides was a married son, J. W. Sides, and another a widowed daughter, Adeline Lewis, who had three children, N. A. Lewis, Prudie Lewis, and John B. Lewis. John B. Lewis is now dead, leaving three children, J. G. Lewis, H. E. Lewis, and R. B. Lewis. The remaining children of Daniel Sides were unmarried at the time of his death, and one of them afterwards married.

Since the death of Daniel Sides, his married son, J. W. Sides, has died, leaving children, and Adeline Lewis has died intestate, leaving two children, and the children of her deceased son. Four of the remaining children of Daniel Sides have also died, never having married. The children of Daniel Sides now living are A. A. Sides, Elvina Sides, and M. S. Sides, three of the plaintiffs in this case.

Daniel Sides died seized and possessed of three tracts of land, set out and described in the petition, said tracts being known and designated as follows, viz.: First, the Reuben Potts Place; second, the River Place; third, the Home Place.

There is no contention between the parties concerning the decision of the court as to the "Potts Place" and the "River Place." The contention is over the "Home Place." In the will of Daniel Sides he provides in one item of his will as follows:

"Item, I further devise that as long as the children remain single, the place where I now reside shall be a common home for them all, but if any of them shall marry, then they, the married ones, shall look out for some other place."

The will later provides as follows:

"Item, I further devise that after the death of my wife, Esther Sides, all my lands except the home place shall be equally divided between my children living at my death, by a commission consisting of three disinterested men, and then each child's lot shall be determined by drawing for it; and the home place shall remain a home for all the single members of the family as long as they shall live, if they choose to do so, and then be divided between the next of kin."

The surviving children, A. A. Sides, Elvina Sides, and M. S. Sides, have come into court and stated that they do not longer care to maintain said home as a common home, but desire to hold their interests in said property in severalty. In this request a number of the heirs at law of Daniel Sides concur.

The clerk of the Superior Court ordered the home place to be sold, and the proceeds divided among the next of kin of Daniel Sides at the time of his death. From this judgment the defendants appealed to the Superior Court, which court rendered judgment dismissing the petition for partition of the "Home Place," containing 211 acres, holding that the same was premature, and that the plaintiffs, A. A. Sides, Elvina Sides, and M. S. Sides, had no right to give up said "Home Place" as a common home, and call for a division of the same, and plaintiffs appealed.

*Dorman Thompson for plaintiffs.*
*R. B. McLaughlin and W. D. Turner for defendants.*

WALKER, J., after stating the case: We need consider but one question, that is, whether the plaintiffs were entitled to partition of the "Home Place." The other questions will be presented when the land is divided or sold for partition, the report of the commissioners is confirmed and directions are given for a distribution of the fund among those entitled to it. The court will then determine how the proceeds of the sale shall be divided in accordance with the terms of the will.

It appears that the testator desired the "Home Place" to be kept for the single members of his family as long as they desired to live together.

He therefore directed that if any should marry, at once a new home should be found. He realized, however, that the time might come when the single members of the family would no longer care to keep the old home in common with each other, and he at once set about to provide for such a contingency. He says in an item of the will, "And the home place shall remain a home for all the single members of the family as long as they shall live, if they choose to do so, and then be divided between the next of kin." It is manifest that the words, "if they choose to do so," must mean that it shall be kept as a home if the single members so choose. If not, "then" it shall be so divided. No other meaning, we think, can be reasonably attached to these words.

The single members of the family, by petition, show the court that they no longer desire to retain this home. They do not "choose to do so." They ask that the court proceed to do, as the testator provided, that is, to divide the land between the next of kin.

The contention of the defendants that the words, "if they choose to do so," means if they, the single members of the family choose to remain single, is a construction not sustained by the language of the will. The testator provided in the first item, relating to the "Home Place," that if any of the family married a new home should be found, and there is no reason why he should say anything further as to this. It could not mean, if any of them chose not to remain single any longer, because such an event had already been fully provided for. It did occur to him, however, that the single members might not wish to occupy the place as their home. If this should happen, he then provided for its division.

The contention of the defendants that the single members cannot give up the home, and that no division of the estate can take place until after the death of the sons and daughters now living, is without merit. If this be true, and all members of the family should have married, then the "Home Place" might remain unoccupied and unused for the remainder of the lives of the sons and daughters. This would lead to a result the testator evidently did not contemplate. The facts show that, at the time of his death, Daniel Sides had four unmarried daughters. Evidently it was his purpose that they should never be forced to leave home. But if they chose to live elsewhere, then he wanted the place divided among those entitled to it under the will. If this be not true, then what would become of the place if it be abandoned by the single members of the family, and they should seek a home elsewhere?

The position of the defendants that this land cannot be divided because the single members have in it a determinable life estate is also without merit. Let it be granted, for the sake of argument, that land cannot be sold for partition when burdened with a determinable life estate, if the life tenant asks for the value of his estate, because there is no way to ascertain the value of the life estate. There is nothing, however, to

prevent the life tenant from surrendering all his rights in his life estate, and asking that the property go immediately to the remaindermen, and thereby take his alternative rights under the will. In this case, the owners of the life estate come into court and ask that the land be partitioned among the remaindermen as directed by the will.

The case of *Watts v. Griffin,* 137 N. C., 572, sustains the view we have taken. There we held that while the parties could not convey during their minority an indefeasible estate, they might waive their right to the "home place" and convey a good title to it, after they had become *sui juris.* In *Ex parte Watts,* 130 N. C., 237 (same will), the Court had said: "We do not mean to say that the children, or any of them, are required to live in the house. Nor are we passing upon the effect of a joint deed executed by all the children after they become *sui juris."* And in *Watts v. Griffin, supra,* we said, upon the same subject, at p. 576: "We think it is clear that the testatrix gave the house and lot to her children for the purpose of advancing their interests in life by providing them and each of them with a home in the event that one was needed, and she also intended in furtherance of this design that the land should not be conveyed or disposed of without the consent of all the devisees. Each one was at all times to have access in the house and lot for the purpose of using them as a home, and could not be deprived of this right, either directly or indirectly, nor be affected by the act of any of the others which would be calculated to interfere with or impair the full enjoyment of the right, in a few words, she did not intend that any of her children should become homeless. . . . It is quite sufficient for us to declare, as we do, that it was not intended by the testatrix, if all her children should think it best for them to part with the homestead, so that each could buy a separate home for himself or herself, that they should be prohibited from doing so. Such a construction might produce dissension and strife in the family, something that we can well see she neither contemplated nor desired. Giving to each one a veto power, it was left to all of them, if they could come to an agreement, to do with the property just as they pleased, and as they might think would promote their interests, their happiness and welfare evidently being the paramount intent of the donor."

We deem it clear that the testator, by the clause of the will under consideration, intended to confer upon his unmarried children the right to occupy the place as their home, but he did not mean that they should be compelled to live there, if they did not desire to do so, and preferred another home for themselves. It was a mere right or privilege, which could be waived or relinquished by them, if they had rather enjoy their share of the property in severalty. If they surrendered this right, it would leave the parties entitled to the property, under the will, as tenants in common and give them the right of partition.

The decision of the court was erroneous, and is reversed, with directions to proceed further in the case as the law provides.

Error.