RUFUS L. DUDLEY v. W. LONNIE STATON AND WIFE,
BETTIE RUTH STATON.

(Filed 10 July 1962.)

**Husband and Wife § 4;    Wills § 60—**

G.S. 30-1, G.S. 30-2, and G.S. 30-3, insofar as they give a husband the
right in certain instances to dissent from his deceased wife's will and
take a specified share of her estate are unconstitutional to the extent
that they diminish *pro tonto* a devise of her separate estate in accordance
with a will executed by her. Constitution of North Carolina, Art. X, § 6.

APPEAL by respondents from *Parker (J. W.), J.,* 26 March 1962
Term of PITT.

Special proceeding for the actual partition of four tracts of land in
Pitt County.

The petition, the admissions in the answer, and a stipulation of the
parties show these facts:

The petitioner, Rufus L. Dudley, and Eva Staton Harris were law-
fully married on 7 January 1947. From then until her death on 14
February 1961 they continuously lived together as man and wife.
They had no children by their marriage. This was petitioner's second
marriage, and Eva Staton Harris's third marriage. Eva Staton Harris
bore only one child, W. Lonnie Staton, a respondent here, by a former
marriage. The *feme* respondent is his wife.

Eva Staton Harris Dudley at the time of her death owned in fee
simple and was in possession of the four tracts of land described in
the petition. By her last will and testament executed on 28 January
1961 she devised and bequeathed all her property, both real and per-
sonal, to her son, W. Lonnie Staton, and made no provision in her will
for her husband, petitioner. Following her death her will was duly
probated on 1 May 1961, and appears of record in Will Book 11, page
284, in the office of the clerk of the superior court of Pitt County.

On 1 May 1961, and within the time prescribed by G.S. 30-2, pe-
titioner filed a dissent from the will of his deceased wife. Thereafter,
on 1 February 1962 he commenced this special proceeding for actual
partition, alleging that by virtue of his dissent he is the owner of a
one-fourth undivided interest in the four tracts of land owned by his
deceased wife, and that her son, W. Lonnie Staton, is the owner of a
three-fourths undivided interest in the said tracts of land.

Respondents in their answer allege that the provisions of G.S. Chap-
ter 30, Article I, as it was written and in force at the time of Eva
Staton Harris Dudley's death on 14 February 1961, insofar as it per-
mits a husband to dissent from his deceased wife's will and take a
share of her real and personal property is in conflict with the provisions

of Article X, section 6, of our State Constitution, and therefore petitioner owns no interest in the four tracts of land described in the petition, and the respondent, W. Lonnie Staton, owns the said tracts of land in fee simple.

When the special proceeding came on to be heard before the clerk of the superior court of Pitt County, he adjudged that petitioner and respondent, W. Lonnie Staton, are tenants in common of the four tracts of land described in the petition, petitioner owning a one-fourth undivided interest, and respondent, W. Lonnie Staton, owning a three-fourths undivided interest. Whereupon, he ordered an actual partition of the four tracts of land. Respondents appealed.

When the appeal came on to be heard by the judge, the parties stipulated: "The sole question for determination by the court is the constitutionality of Article I, Chapter 30 of the General Statutes of North Carolina, pertaining to and giving the surviving spouse the right of dissent from the will of his or her deceased spouse." The judge held that the right of dissent given by G.S., Article I, Chapter 30, is in all respects constitutional, and affirmed the clerk's order. Whereupon, he remanded the special proceeding to the clerk to the end that actual partition be had according to law.

From the judgment entered by the judge, respondents appeal.

*Blount & Taft by Fred T. Mattox for respondent appellants.*
*Lewis G. Cooper and Louis W. Gaylord, Jr., for petitioner appellee.*

PARKER, J.   The Constitution of North Carolina adopted 24 April 1868 contains the following words:

> "ARTICLE X, SECTION 6. PROPERTY OF MARRIED WOMEN SECURED TO THEM.—The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations, or engagements of her husband, and may be devised and bequeathed, and, with the written assent of her husband, conveyed by her as if she were unmarried."

A one sentence amendment to this section adopted by a vote of the people of the State at a general election held 8 September 1956, giving a married woman the right to exercise powers of attorney conferred upon her by her husband, including power to execute and acknowledge deeds to property, is not relevant to this appeal.

The power conferred by Article X, section 6, of the 1868 Constitution upon married women in this State to devise and bequeath their real and personal property as if they were unmarried is confirmed by statute, G.S. 52-1, in the same words as set forth in the constitutional section. This constitutional power conferred upon married women is further confirmed by statute. G.S. 52-8 provides that "every married woman 21 years of age or over has power to devise and bequeath her real and personal estate as if she were a feme sole; and her will shall be proved as is required of other wills." This statute, except for the words "21 years of age or over," was enacted by the General Assembly at its 1871-72 session, and appears in Public Laws of North Carolina, session 1871-72 in Chapter 193, section 31.

The General Assembly at its 1959 session enacted a statute, which appears in the 1959 Session Laws of North Carolina in Chapter 880 (codified in the 1959 Cumulative Supplement to Recompiled Vol. 2A of G.S. as sections 30-1, 30-2, and 30-3), and is entitled "AN ACT TO REWRITE THE STATUTES ON DISSENT FROM WILLS." Section 30-1 (a) of this statute, and as it is codified, provides: "Except as provided in subsection (b) of this section, any surviving spouse may dissent from his or her deceased spouse's will." Section 30-2 of the statute, and as it is codified, provides as to the time and manner of dissent. Section 30-3 of the statute, and as it is codified, provides as to the effect of a dissent. Subsection (a) provides that "upon dissent as provided for in G.S. 30-2, the surviving spouse, except as provided in subsection (b) of this section, shall take the same share of the deceased spouse's real and personal property as if the deceased had died intestate," with a proviso that if the deceased spouse is not survived by a child, children, or any lineal descendant of such, or by a parent, the surviving spouse shall receive only one-half of the deceased spouse's estate, which one-half shall be determined before any federal estate tax is deducted or paid, and shall be free of such tax. Subsection (b) provides that whenever the surviving spouse is a second spouse, as here, he or she shall take only one-half of the amount provided by the Intestate Succession Act for the surviving spouse if the testator has surviving him lineal descendants by a former marriage, as here, but there are no lineal descendants surviving him by the second or successive marriage. Subsection (c) provides: "If the surviving spouse dissents from his or her deceased spouse's will and takes an intestate share as provided herein, the residue of the testator's net estate, as defined in G.S. 29-2, shall be distributed to the other devisees and legatees as provided in the testator's last will, *diminished pro rata unless the will otherwise provides*." Emphasis ours. The statute

provides that it shall become effective on 1 July 1960, and shall be applicable only to estates of persons dying on or after 1 July 1960.

Eva Staton Harris Dudley, the testatrix here, died on 14 February 1961. The parties have stipulated that none of the exceptions set forth in G.S. 30-1, subsection (b), exist, which would prevent petitioner from filing a dissent. It is admitted that on 1 May 1961, and within the time and in the manner prescribed by G.S. 30-2, petitioner filed a dissent from the will of his deceased wife. The parties have further stipulated that the four parcels of realty described in the petition were acquired by the testatrix subsequent to the year 1868.

The General Assembly at its 1961 session enacted a statute, which appears in the 1961 Session Laws in Chapter 959 (codified in the 1961 Cumulative Supplement to Recompiled Vol. 2A of G.S. as sections 30-1, 30-2, and 30-3), and is entitled "AN ACT TO AMEND CHAPTER 30 OF THE GENERAL STATUTES RELATING TO SURVIVING SPOUSES." Section 30-1 of the 1959 Act, and as it is codified, was rewritten to read as follows: "Section 30-1. Right of dissent. (a) A spouse may dissent from his deceased spouse's will in those cases where * * *." The statute then sets forth in detail the cases in which a dissent may be filed. The 1961 Act became effective on 1 July 1961. It seems certain from the pleadings, admissions, and stipulations here that nothing exists as set forth in the 1961 Act, which would prevent petitioner from dissenting from his deceased wife's will, if she had died after 1 July 1961. G.S. 30-2 of the 1959 Act, and as it is codified, as to time and manner of dissent was rewritten. If petitioner's wife had died after 1 July 1961, petitioner's dissent complies with this section as rewritten. G.S. 30-3 of the 1959 Act, and as it is codified, was not rewritten, but merely amended as to a part of subsection (a), and that as to the proviso therein.

The 1961 Act did not repeal the right given by the 1959 Act to a husband to dissent from his deceased spouse's will, though it more elaborately defines the circumstances when he may dissent, and did not repeal the provisions of subsection (a) of section 30-3 of the 1959 Act, and as it is codified, that "upon dissent as provided for in G.S. 30-2, the surviving spouse, except as provided in subsection (b) of this section, shall take the same share of the deceased spouse's real and personal property as if the deceased had died intestate," though it amended the proviso, and it did not change the provisions of subsections (b) and (c) of the 1959 Act, and as it is codified.

The question for decision here is this: Do the provisions of G.S. 30-1, 30-2, and 30-3, insofar as they give a husband a right in certain cases to dissent from his deceased wife's will, and to take a specified share of his deceased wife's real and personal property, whereby the residue

of his deceased wife's net estate, as defined in G.S. 29-2, shall be distributed to the devisees and legatees, as provided in her last will, *diminished pro rata* by the share taken by the husband, violate the provisions of Article X, section 6, of the North Carolina Constitution? The answer is, Yes.

The Court in a scholarly opinion, written by *Judge Gaston,* who was one of the most eminent jurists who ever sat upon this Court, said in *Newlin v. Freeman,* 23 N.C. 514:

> "By the common law of England, after the conquest, lands could not be devised; but the Statute of Wills, 32 H. VIII., ch. 1, explained, because of abundant caution, by Stat. 34 H. VIII, ch. 5, enacted that all persons seized in fee simple (except *femes covert,* infants, idiots, and persons of nonsane memory) might devise to any other person, except bodies corporate, two-thirds of their land held in chivalry, and the whole of those holden in socage. This was the law brought over to this country by our ancestors, and, as all tenures here before the Revolution were by free and common socage, this power of devising applied to all lands within the colony. Many laws have since the Revolution been enacted by our Legislature on the subject of devises, but none extending or abridging the *power* of tenant in fee simple, such as it existed at the Revolution. A married woman, neither in the country of our ancestors nor with us, ever had capacity to devise. It is true that she might by means of a power, properly created, appoint a disposition of her real estate after death, which power must be executed, like the will of a *feme sole,* and is subject very much to the same rules of construction. But the act, if good, is valid as an *appointment* under a power, and it is not a devise; for to hold it such would be to give to a married woman a capacity which she did not possess at common law and which no statute has conferred upon her."

The General Assembly at its Session of 1844-45, it would seem as a result of the decision in *Newlin v. Freeman,* enacted a statute set forth in Chapter LXXXVIII, subsection VIII, Public Laws of North Carolina from 1844 to 1847, as follows:

> "That when any married woman, under any will, deed, settlement, or articles, shall have power, by an instrument in nature of a will, to appoint or dispose of any property, real or personal, and she shall have executed, or shall execute any such instrument, the same may be admitted to probate in the proper Court of Pleas and Quarter Sessions, or may be proved originally in a Court

of Equity, upon a proper bill for that purpose; and either mode of probate shall be conclusive as to the due execution thereof."

This subsection was codified in Rev. Code, Ch. 119, sec. 3.

Article X, section 6, of the 1868 State Constitution completely abolished the general doctrine of the common law that as to property husband and wife are in legal contemplation but one person, and the husband is that one, and made very material and far-reaching changes as to the rights respectively of husband and wife in respect to her property, both real and personal, and enlarged her power in respect to and control over her property. *Walker v. Long*, 109 N.C. 510, 14 S.E. 299; 41 C.J.S., Husband and Wife, sec. 5 (a). This section of the State Constitution established for a married woman the ownership and control of all her property, real and personal, as her sole and separate estate and property, and further provided that it shall not be liable for any debts, obligations, or engagements of her husband. It further established for a married woman that she could devise and bequeath all her property *as if she were unmarried,* and with the written assent of her husband conveyed by her as if she were unmarried.

In *Walker v. Long, supra,* the Court held, *inter alia,* that the common law estate of the husband as tenant by the curtesy *initiate* in the lands of his wife was abolished by section 6, Article X of the 1868 State Constitution. *Chief Justice Merrimon* writing the opinion for the Court said in respect to this constitutional provision:

> "This provision is very broad, comprehensive and thorough in its terms, meaning and purpose, and plainly gives and secures to the wife the complete ownership and control of her property, as if she were unmarried, except in the single respect of conveying it. She must convey the same with the *assent* of the husband. It clearly excludes the ownership of the husband as such, and sweeps away the common-law right, or estate, he might at one time have had as tenant by the curtesy *initiate.*"

In *Perry v. Stancil,* 237 N.C. 442, 75 S.E. 2d 512, the Court held "that the limitation upon the right of a married woman to convey her real property, contained in Art. X, sec. 6, of the Constitution, applies only to conveyances executed by her to third parties, that is, persons other than her husband." This decision does not abridge the wife's rights, but enlarges them.

In *Tiddy v. Graves,* 126 N.C. 620, 36 S.E. 127, (1900), the Court held, *inter alia,* that "it is clear that under the present Constitution there is no curtesy after the death of the wife in property which she has devised." The opinion written by *Clark, J.,* after quoting exten-

sively from *Walker v. Long, supra*—a part of which we have quoted above—then says:

"This is necessarily so, as the separate estate *remains* the wife's during coverture with unrestricted power to devise and bequeath it. With this explicit provision in the Constitution, no statute and no decision could restrict the wife's power to devise and bequeath her property as fully and completely as if she had *remained unmarried.*

"The plaintiff insists that curtesy in the husband of the whole of the wife's realty is the correlative of dower in the wife of one-third of the husband's realty, and if the Legislature can confer dower it can retain curtesy. That is true, when the *feme covert* dies intestate, as is pointed out in *Walker v. Long, supra,* but the Constitution having guaranteed that a married woman *shall be and remain* sole owner of her property with unrestricted power to devise it, the Legislature can not restrict it. Blackstone justly says that no one has the natural right to dispose of any property after death. The power to do so is conferred by law, and varies in different countries. In England it did not exist after the Conquest, till the Statute of Wills, 32 Henry VIII. Of course, as the Legislature confers the right to devise, in the absence of constitutional inhibition it can repeal or restrict the power of devise, and, till the Constitution of 1868, which gave a married woman the unrestricted power to devise and bequeath her property, as if unmarried, the limitation of such power could be made by legislation allowing curtesy as well as dower. If the Constitution had gone further and provided that the property rights of a married man should remain as if he were single, and expressly conferred the unrestricted right to devise his realty, then, certainly, when he had devised it in fee there could be no right of dower. The Legislature could only prescribe for dower in realty not devised, as it can now only confer curtesy in realty not devised."

The learned dean of the Law School of Trinity College, now Duke University, states in his Law Lectures, Vol. 1, p. 371, (1916):

"They [married women] had no power to make any will in this state prior to the constitution of 1868, except when such a power was given them in some instrument by which property was vested in them; but they could make testamentary dispositions of their property with the consent of their husbands, and if the husband had agreed, by marriage settlement, that the wife should have this right, he could not revoke such agreement * * * But now,

married women can devise and bequeath their separate estates just as though they were femes sole; and an act of the Legislature attempting to forbid their devising their lands so as to deprive their husbands of an estate by the curtesy, is unconstitutional." Dean Mordecai cites in support of the last sentence quoted Article X, section 6, of the present Constitution; *Walker v. Long, supra; Tiddy v. Graves, supra;* Rev., secs. 3112, 2102, 2098; *Hallyburton v. Slagle,* 132 N.C. 947, 44 S.E. 655; *Watts v. Griffin,* 137 N.C. 572, 50 S.E. 218.

*Walker v. Long* and *Tiddy v. Graves* we have above discussed and quoted from. Revisal sec. 3112 stated: "A married woman owning real or personal property may dispose of the same by will." Revisal sec. 2102 is in respect to an estate by the curtesy. The Intestate Succession Act, enacted by the 1959 General Assembly, and applicable only to estates of persons dying on or after 1 July 1960, abolished the estates of curtesy and dower. 1959 Session Laws of North Carolina, Chapter 879, sec. 1—codified G.S. 29-4 in the 1959 and 1961 Cumulative Supplement to Recompiled Volume 2A of G.S. Revisal 2098 (now G.S. 52-8) we have quoted above, including the words "21 years of age or over" inserted by the 1953 amendment. *Hallyburton v. Slagle* and *Watts v. Griffin* hold that since the 1868 Constitution a married woman may by will deprive her husband of curtesy in her separate estate.

Petitioner relies upon the case of *Flanner v. Flanner,* 160 N.C. 126, 75 S.E. 936, (1912), which he contends is controlling here. In that case it was contended by defendant that section 3145 of the 1905 Revisal, which provides that "children born after the making of the parent's will and where parent shall die without making any provision for them, shall be entitled to such share and proportion of such parent's estate as if he or she had died intestate," is unconstitutional, in that it deprives a married woman of the right to dispose of her property by will as if she were unmarried, as provided in Article X, section 6, of the State Constitution of 1868. The Court said:

> "Under the principles of the common law as understood and allowed to prevail in this State, the subsequent birth of a child did not of itself amount to revocation of a testator's will. *McCay v. McCay,* 5 N.C. 447. That case presented at *nisi prius* in Rowan County at October Term, 1808, seems to have attracted the attention of the Legislature, and at November session following a statute was enacted regulating the subject and in terms substantially similar to the provision as it now appears in Revisal 1905, sec. 3145."

The Court in its opinion, after stating that defendant's contention cannot be upheld, because the contention involves a misconception of the meaning of Article X, section 6, of the 1868 Constitution, as applied to the facts of the present case, says:

> "The section referred to, after providing that the property of a married woman acquired before marriage and all to which she may become entitled afterwards shall remain her sole and separate estate, etc., continues as follows: 'and may be devised and bequeathed and, with the written assent of her husband, conveyed by her as if she were unmarried.' This right to dispose of property by will is a conventional rather than an inherent right, and its regulation rests largely with the Legislature except where and to the extent that same is restricted by constitutional inhibition. *Thomason v. Julian, supra* [133 N.C. 309, 45 S.E. 636]; 1 Underhill on Wills, p. 1; 2 Blackstone Common., pp. 488-492.
>
> "Being properly advertent to this principle, a perusal of the section relied upon will disclose that its principal purpose in this connection was to remove to the extent stated the common-law restrictions on the right of married women to convey their property and dispose of same by will, and was not intended to confer on them the right to make wills freed from any and all legislative regulation. The right conferred is not absolute, but qualified."

The case of *Thomason v. Julian* holds a will of a father expressly excluding the children of the testator born after the execution thereof makes a provision for them within the meaning of The Code, sec. 2145, and such children do not share in the estate as though the testator had died intestate. Article X, section 6, of the present Constitution had no application, and is not mentioned in the case. 1 Underhill on Wills, p. 1; 2 Blackstone Common., pp. 488-492 make no reference to our constitutional provision here, or any one of similar import.

When the opinion in the *Flanner* case was filed, the writer of the opinion in *Tiddy v. Graves, supra,* was *Chief Justice.* Why that case and *Walker v. Long, supra,* were not mentioned in the *Flanner* case, we can never know. Article X, section 6, of our present Constitution expresses as directly, plainly, clearly, unambiguously, and explicitly as words can that "the real and personal property of any female in this State * * *, shall be and remain the sole and separate estate and property of such female, * * * and may be devised and bequeathed, * * * by her as if she were unmarried." It seems perfectly clear and plain to us that these words used by the framers of our present Constitution plainly and explicitly and directly and unambiguously show an intention on their part not only to remove the incapacity of a mar-

ried woman to dispose of her property by will, but also to write into the Constitution that a married woman could dispose of her property by will as if she were unmarried, so as to put it beyond the power of the General Assembly to restrict, or abridge, or impair, or destroy such right, and that they did so effect their intent by the words they used. It is difficult, if not impossible, to conceive of any words that the framers of our present Constitution could have used to express such an intent and purpose more directly, plainly, clearly, unambiguously, and explicitly. We are not convinced by the reasoning in the *Flanner* case that this constitutional right of a married woman to dispose of her property by will is not absolute, but qualified so that the General Assembly can impair or abridge it; if the General Assembly can impair or abridge it, the General Assembly can destroy it. Even if we concede that the statement in *Tiddy v. Graves, supra,* "with this explicit provision in the Constitution [Article X, section 6], no statute and no decision could restrict the wife's power to devise and bequeath her property as fully and completely as if she had *remained unmarried,*" is *obiter dictum,* it is sufficiently persuasive to be followed here. 21 C.J.S., Courts, sec. 190, p. 314. The decision and the reasoning in the *Flanner* case are not controlling here.

The Court has held that there is no constitutional inhibition on the power of the Legislature to declare where and how the wife may become a free trader, because Article X, section 6, of the 1868 Constitution "was not intended to disable, but to protect her." *Hall v. Walker,* 118 N.C. 377, 24 S.E. 6. It has also been held by this Court that where a husband has abandoned his wife, she may convey her property without his consent under C.S. 2530 and that such statute was not inhibited by Article X, section 6, of the 1868 Constitution, for the reason this section of the Constitution "was not intended to disable, but to protect her." *Keys v. Tuten,* 199 N.C. 368, 154 S.E. 631. Clearly, these cases, and others of similar import, are plainly distinguishable from the instant case, because the statutes we are considering giving to a surviving husband the right, in certain cases, to dissent from his deceased wife's will, and thereby to take a specified share of her property, diminish her estate disposed of by her will to that extent, and restrict and abridge her constitutional power to dispose of her property by will as if she were unmarried: this is not a protection of, but an abridgment of her constitutional right.

Under all the facts here petitioner owns no interest in the four tracts of land described in the petition, and devised by his deceased wife in her last will to her son W. Lonnie Staton, pursuant to the right given

her by Article X, section 6, of our present Constitution. When this case is certified down to the superior court, it will enter a judgment reversing the judgment below, and dismissing the case.

Reversed.