130 S.E.2d 387 (1963)
259 N.C. 255
FIRST UNION NATIONAL BANK OF NORTH CAROLINA, Executor of the Estate of Adam J. Melvin,
v.
Marie A. MELVIN et al.
No. 165.
Supreme Court of North Carolina.
April 17, 1963.
*391 Garland and Eck, Gastonia, for plaintiff-appellant.
Mullen, Holland and Cooke, Gastonia, for James A. Melvin, Jr., Robert Bruce Melvin and Christina Melvin, defendant-appellants.
Verne E. Shive, Gastonia, guardian ad litem for Donna Melvin, Douglas Melvin and David Melvin, defendant-appellants.
SHARP, Justice.
On this appeal each answering defendant makes contentions in accordance with his pecuniary interest. The plaintiff executor contends that the judgment of the Superior Court is correct except as to Ruling No. 3. However, as we have repeatedly held, the executor is not a party aggrieved entitled to appeal when the Superior Court directs a distribution among beneficiaries contrary to his ideas. For an executor to appeal the judgment must be prejudicial to the estate. Wachovia Bank & Trust Co. v. Bryant, 258 N.C. 482, 128 S.E. 2d 758; Ferrell v. Basnight, 257 N.C. 643, 127 S.E.2d 219; Dickey v. Herbin, 250 N. C. 321, 108 S.E.2d 632. The plaintiff's appeal will be dismissed and the First Union National Bank of North Carolina will not pay the costs of this appeal including attorneys' fees, from funds of the estate. Dickey v. Herbin, supra.
Bruce Melvin is the only specific legatee in the will of Adam J. Melvin; he is bequeathed the business known as the Gastonia Comber Needling Company. Shepard v. Bryan, 195 N.C. 822, 143 S.E. 835. Along with the minor defendants, Donna, Douglas, and David Melvin, he is also a residuary legatee. Defendants James A. Melvin, Christina Melvin, and Marie A. Melvin are general legatees who were bequeathed specific sums. Bost v. Morris, 202 N.C. 34, 161 S.E. 710; Heyer v. Bulluck, 210 N.C. 321, 186 S.E. 356. After her dissent, the widow was no longer a beneficiary under the will. Under G.S. § 30-3(a), as the dissenting widow of a deceased who was not survived by any lineal descendants or a parent, *392 the judge correctly held in Ruling No. 1 that she became entitled to one-half of the net estate as defined by G.S. § 29-2(3). Under the statute, this one-half must be estimated and determined before any federal estate tax is deducted or paid, and is free and clear of such tax.
The other Rulings will be considered seriatim as numbered in the statement of facts.
Ruling No. 2 presents this question: Under G.S. § 30-15, as rewritten by Chapter 749 of the Session Laws of 1961, does a widow who has dissented from her husband's will take her year's allowance in addition to, or as a part of, her statutory share in his estate? The answer is that she takes it in addition to her statutory share.
Prior to June 13, 1961, the date on which the rewritten section became effective, G.S. § 30-15 provided a year's allowance only for the widow of an intestate or of a testate from whose will she had dissented, and it specifically declared the allowance to be "in addition to her distributive share in her husband's personal estate." The rewritten section, which follows, provides a year's allowance for all widows.
"Every surviving spouse of an intestate or of a testator, whether or not he has dissented from the will, shall, unless he has forfeited his right thereto as provided by law, be entitled, out of the personal property of the deceased spouse, to an allowance of the value of one thousand dollars ($1,000.00) for his support for one year after the death of the deceased spouse. Such allowance shall be exempt from any lien, by judgment or execution, acquired against the property of the deceased spouse, and shall, in cases of testacy, be charged against the share of the surviving spouse." (Italics ours)
All legatees contend that since Adam J. Melvin died testate the italicized portion of the section requires his widow's year's allowance to be charged against her share of the estate. The trial judge properly rejected this contention. The italicized language refers only to the share of a widow who takes in accordance with the will and has not dissented from it. Upon his widow's dissent, in legal effect, testator died intestate as to her, Worth v. Atkins, 57 N.C. 272, and G.S. § 30-3(a) determined her rights in his estate.
G.S. § 29-2(3) provides the formula for determining the net estate:
"`Net estate' means the estate of a decedent, exclusive of family allowances, costs of administration, and all lawful claims against the estate."
It is clear from the statutes quoted above that after deducting the cost of administration, all lawful claims against the estate, and the widow's $1,000.00 year's allowance, the share of the widow in this case will be one-half of the balance remaining.
It will be noted that all the statutes with reference to dissents from a will refer to a spouse, a deceased spouse, or a surviving spouse. However, since this Court held in Dudley v. Staton, 257 N.C. 572, 126 S.E.2d 590, that Article X, Section 6 of the Constitution of North Carolina prohibited a dissent by a husband from his wife's will, the word spouse wherever it appears in a statute with reference to a dissent, applies to a widow. Under rewritten G.S. § 30-15, for the first time in our law a husband may be entitled to a year's allowance. If the wife dies intestate he has the same right as a widow. If she dies testate, he may or may not have the right to an allowance depending on what provision is made for him. If she disinherits him in her will, since he cannot dissent, clearly he can have no allowance.
Ruling No. 3 poses this question: When a widow dissents from her husband's will, is the residuary estate first liable for her share or is it to be taken pro rata from the shares of all the named beneficiaries?
*393 Prior to the effective date of G.S. § 30-3 (c) on July 1, 1960, North Carolina was in accord with the majority view that when a widow's dissent made it necessary for other beneficiaries to contribute to her statutory share, the residuary estate was first liable. Worth v. Atkins, supra; Baptist Female University of North Carolina v. Borden, 132 N.C. 476, 44 S.E. 47; Anno: Who Must Bear Loss Occasioned by Election against Will? 36 A.L.R.2d 291, 299.
Today, however, the answer to the question must be found in G.S. § 30-3(c) which follows:
"If the surviving spouse dissents from his or her deceased spouse's will and takes an intestate share as provided herein, the residue of the testator's net estate, as defined in G.S. 29-2, shall be distributed to the other devisees and legatees as provided in the testator's last will, diminished pro rata unless the will otherwise provides."
The general legatees bequeathed specific sums contend that this Court has given the word residue a legal definition in Wachovia Bank & Trust Co. v. Grubb, 233 N.C. 22, 62 S.E.2d 719, and other cases, and that the legislature so used it in G.S. § 30-3(c), thereby indicating an intention to continue in effect the rule which prevailed prior to July 1, 1960. In Grubb, supra, the Court said:
"The residue of an estate comprehends all of the estate left by the testator at the time of his death, subject to all deductions required by operation of law or by direction of the testator. Conversely stated, the residue is that part of the corpus of the estate left by the testator which remains after the payment of specific legacies, taxes, debts, and costs of administration."
However, we think G.S. § 30-3(c) clearly indicates that the legislature did not there use residue as defined in Grubb, supra. When the dissenting widow, as here, is entitled to one-half of the deceased spouse's net estate as defined in G.S. § 29-2(3), G.S. § 30-3(c) says that the residue of the testator's net estate for distribution to other devisees and legatees is as defined in G.S. § 29-2. The only definition of net estate contained in G.S. § 29-2 is in subsection (3) referred to in the preceding sentence. Obviously the phrase "all lawful claims against the estate," as there used, does not include either specific legacies or general legacies for specific amounts. If it did, the net estate in many instances would be so depleted by their payment that it would be insufficient to provide the widow with the same share of her husband's real and personal property as if he had died intestate.
In the use of the phrase "lawful claims against the estate" in G.S. § 29-2(3), the legislature was not referring to claims of beneficiaries created either by the will or the statute of descents and distributions. Therefore, under the specific requirements of the statute, the balance of this estate remaining after the defendant widow has received the benefits to which G.S. § 30-3 (a) entitled her, "shall be distributed to the other devisees and legatees as provided in the testator's last will, diminished pro rata * * *." G.S. § 30-3(c).
Adam J. Melvin, although charged with notice that his widow might claim her statutory rights in his estate, obviously did not contemplate a dissent. The statutory method of a pro rata contribution by the other beneficiaries named in the will must be employed since the will does not otherwise provide.
The court below unerringly interpreted the statute when it declined first to charge the residuary beneficiaries with the deficit created by the widow's dissent and held that all beneficiaries must contribute pro rata.
In Rulings Nos. 4 and 5 the trial court correctly held that the specific legatee, Bruce Melvin, was entitled to the income from Gastonia Comber Needling Company from the date of testator's death; that the income from the personalty not specifically *394 devised should be used first to pay debts, costs of administration, and other charges against the estate not created by the widow's dissent; and that any surplus income should be paid one-half to the dissenting widow and one-half to the residuary beneficiaries.
These Rulings are in accord with the following well-established principles: specific legacies carry with them all accessions by way of dividend entireties, and accretions after the death of the testator unless the will directs otherwise. Smith v. Smith, 192 N.C. 687, 135 S.E. 855; Bost v. Morris, supra; 57 Am.Jur., Wills, Sec. 1615. When the property from which general legacies must come provides income, it is a general asset of the estate subject to the payment of debts and disposition under the terms of the will and, where a widow dissents, is to be proportionately distributed to her under the applicable statute. Smith v. Smith, supra; Anno: Surviving Spouse Who Elects to Take Against Will is Entitled to Increase or Profit of Estate Accruing after Testator's Death, 50 A.L.R.2d 1253.
It will be noted that the trial court's ruling was with reference to income from and not interest on legacies. These are related but separate matters. Branch Banking & Trust Co. v. Whitfield, 238 N.C. 69, 76 S.E.2d 334; Hart v. Williams, 77 N.C. 426.
In Ruling No. 6, the trial court rightly held that upon her dissent the defendant widow became vested with a one-half undivided interest in all realty owned by testator at his death and was entitled to the income therefrom.
Upon filing her dissent to the will the defendant widow became vested, as of the date of testator's death, with title to that part of his real property allowed her by statute as surviving spouse. While the personal property of an intestate passes directly to his administrator, his real property descends directly to his heirs, subject to be divested only if it becomes necessary to sell land to make assets to pay debts. All rents accruing from the use or occupancy of his realty after the death of an intestate becomes the property of the heirs entitled to the real property. In re Estate of Galloway, 229 N.C. 547, 50 S.E.2d 563; Anno: Accretions to Subject of Legacy, 116 A.L.R. 1129.
In rewriting the statutes on dissents and intestate succession, the Legislature of 1959 did not change the above Rules. G.S. § 29-3 abolishes the distinction between real and personal property only in the determination of those persons who take upon intestate succession, and G.S. § 29-2(6) provides that "the share of a net estate or property which any person is entitled to take, includes both the fractional share of the personal property and the undivided fractional interest in the real property" to which he is entitled.
To the extent of her right to one-half of the personal property belonging to the estate and to an allowance for a year's support, the defendant widow, Marie A. Melvin, became and is a claimant against the estate. As dissenting widow she is entitled to one-half of the real property of which her husband was seized during coverture and the income therefrom to the extent of her interest.
Ruling No. 7 relates to the payment of estate and inheritance taxes upon the widow's share of the estate. It is free from error. Item II of the will specifically directed that all estate and inheritance taxes be paid out of the residuary estate. Having dissented from the will, however, the widow can take no benefit from it. Therefore, she must pay the North Carolina inheritance tax on her share. G.S. § 105-4; § 105-18. Nevertheless, as heretofore pointed out, G.S. § 30-3(a) provides that defendant widow's one-half of testator's net estate shall be estimated before any federal estate tax is deducted and is free and clear of such tax.
*395 The codicil eliminated the trusts which testator had provided for his brother and sister in Item VII of the will, but it ratified Items V and VI which authorized the executor to operate testator's business interests until such time as it deemed appropriate to dispose of them. It also reaffirmed Item X which enumerated the powers of the executor and trustee and specifically stated that the grant of powers to the plaintiff was "(w)ithout distinguishing between its * * * powers as executor and as trustee. * * *" Ruling No. 8 affects the testator's intent.
The court below having in each instance correctly instructed the executor, its judgment is
Affirmed.